## McWILLIAMS et al. v. HOME INS. CO.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. INSURANCE—MARINE ACCIDENTS—CONSTRUCTION OF POLICY—LOSS.

The owner of a tug was insured against loss arising from any accident to any other vessel or its cargo for which the tug or insured might be legally liable. The policy stipulated that the liability of the company should be limited in all cases to the amount of actual repairs necessary and the actual loss on the cargo, and that the company should not be liable unless the liability of the tug was determined by a suit at law, or otherwise, as it might elect. *Held*, that the taxed costs adjudged against insured in a suit to determine the liability of his tug were no part of the loss insured against, and must be borne by insured as a part of the expense of making proof of loss.

2. SAME—WARRANTY—EVIDENCE—OPINIONS OF COURTS.

A policy of insurance against any loss insured might sustain by reason of liability to other vessels for damages occasioned by his tug contained a warranty that the tug should not tow a larger number of boats than it could at all times properly and safely handle and fully protect. In an action brought by insured to limit his liability for an accident to the value of the tug, the trial court, in its opinion, made the statement that the tug was liable for a lack of reasonable prudence in starting with a tow of 14 vessels at a time when the bad weather which it encountered and which contributed to cause the loss was, according to all experience and within the ordinary knowledge of boatmen, to be hourly expected. *Held*, that such statement was not evidence of facts which would justify a jury in finding a breach of the warranty.

3. SAME—LIMITATION OF ACTIONS—OCCURRENCE OF LOSS.

A policy insuring the owner of a tug against loss arising from any accident to any other vessel or its cargo for which insured or his tug might be liable stipulated that the insurer should not be liable unless the liability of insured for such damage should be determined by a suit at law, or otherwise, as the insurer might elect; that all claims should be void unless prosecuted within 12 months of the loss; and that insured should defend any suits to subject him to any liability insured against. *Held*, that the loss from which the 12 months' limitation commenced to run did not occur until insured had paid the damage pursuant to a decree of a court of last resort adjudging him or his tug liable therefor.

Appeal from trial term, New York county.

Action by Daniel McWilliams and others against the Home Insurance Company. From a judgment in favor of plaintiffs, both parties appealed. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

R. D. Benedict, for plaintiffs.
William Ives Washburn, for defendant.

INGRAHAM, J. Both parties appeal from this judgment,—the plaintiffs because of the refusal of the court to allow a recovery for the amount of the costs paid by the plaintiffs in the litigation to determine the question as to the liability of the two tugs of which the plaintiffs were the owners for the loss and damage arising from and growing out of a collision, and the defendant because of the denial of the motion to dismiss the complaint. The action was brought to recover under a policy of insurance. The policy provided that

the insurance was to fully indemnify the insured, "subject only to the terms and conditions of this policy, for loss and damage arising from or growing out of any accident caused by collision and (or) stranding, resulting from any cause whatever to any other vessel or vessels, their freights and cargoes (or each or any of them), for which said steam tug or its owners may be legally liable.  *  *  *  The liability of the said company to be limited in all cases to the amount hereby insured, and the liability of said company for loss and damage to vessel or vessels to be limited to the amount of actual repairs rendered necessary in consequence of any disaster insured against, and also to the actual loss or damage to the cargo, which shall be valued at the cash market price on the day of disaster, and also on freight to the actual amount lost in consequence of any peril insured against.  *  *  *  Should any loss or damage happen during the period insured as aforesaid, this company shall not be liable unless the liability of the said steam tug for such loss or damage is determined by a suit at law, or otherwise, as this company may elect. *  *  *  It shall be lawful and necessary to and for the insured, his, her, or their agents, factors, servants, and assigns, to sue, labor, and travel for, and to make all reasonable exertions in and about, the defense, safeguard, and recovery of the said vessels and cargoes, or any part thereof, without prejudice to this insurance." It appeared from the evidence that on the night of November 9, 1893, these two tugs were towing a tow of 14 canal boats and barges to Bridgeport on the Sound; that, while on that voyage, two boats in the head tier of the tow, the Dom Pedro and the Minnie, collided. One of the boats sank. In consequence, the tow was broken up, and several of the boats and their cargoes were lost. The owners of six of these boats notified the plaintiffs that they intended to bring suit against the tugs for the value of the boats thus lost. Thereupon the plaintiffs, finding that the claims exceeded the value of the tugs, filed a libel in the district court of the United States in limitation of liability, asking a decree, in the first place, that the tugs were not liable at all, and, in the second place, that their liability should be limited to the value of the tugs. That action resulted in a decree of the United States district court limiting the liability of the plaintiffs, but holding them liable up to the value of the two tugs. An appeal was taken to the circuit court of appeals, which affirmed the decree, and on the 27th of June, 1896, a final decree of the district court was entered for the payment by the owners of the tugs (the plaintiffs) of the sums decreed against them, with costs, which amounted to $6,850. The plaintiffs, having paid the amount specified in such decree, brought this action to recover such amount. The court directed a verdict for the plaintiffs for the amount of the payments, under the decree for the loss or damage sustained, but refused to include in that amount the taxed costs to the proctors for the various claimants in the proceeding in the United States court.

The question of the liability of the insurance company for the costs and expenses of the litigation under a policy such as that sued on in this action was settled by this court in the case of Fernald v. Insurance Co., 27 App. Div. 138, 50 N. Y. Supp. 838. As that case dis-

poses of this question, we rest the affirmance of the judgment on the plaintiffs' appeal upon the authority thereof.

Upon the defendant's appeal, two questions are presented—First, that the evidence shows a breach of warranty contained in the policy of insurance; and, second, that the claim of the plaintiffs was barred by the limitation contained in the policy of insurance. The policy of insurance contained the following provision:

"Warranted by the insured that the steam tug aforesaid shall at all times be in charge of, and commanded by, a duly-licensed pilot or captain, and that she shall not take or tow a larger number of boats or craft than she can at all times properly and safely handle and fully protect."

The defendant offered no evidence upon the trial, tending to show that this warranty was violated by the plaintiffs, but depended entirely upon the opinion delivered by Judge Brown in the United States district court, in which he decided the question of the liability of the tugs. There is nothing in the decree of the court by which it was adjudged that this warranty was broken, the decree simply adjudging that the said steam tugs were both in fault for the disaster and damage; and the defendant relies solely upon the ground that the judge, in his opinion, stated that the tugs were liable for a lack of reasonable prudence in starting with such a tow at a time when the bad weather that followed was, "according to all experience and within the ordinary knowledge of boatmen, to be hourly expected." The plaintiffs called as witnesses the captains of the two tugs and the captain of one of the barges which was lost. From that testimony it appeared that the tow had nice weather on the start, but that the wind came out from the eastward way, and, as one of the witnesses called it, "a pretty good swell" came in. "The consequence was that the Minnie, [one of the barges] by heaving up and down, laboring in the sea-way, caught in a guard of the Dom Pedro, and lifted it up for a distance of from twenty to twenty-five feet. She began to fill and sink in about three minutes," and the tow then broke up. One of the witnesses also testified that these two tugs had in tow 14 canal boats; that there was very little wind, but quite a heavy swell, and that the tow could have got along all right had it not been for the breaking of the Dom Pedro by the collision with the Minnie; that one of the tugs had since that time taken 16 boats; that the tow was made up in the usual way, navigating the usual course; and that there was no difficulty in the two tugs together handling these boats that night. This evidence was not contradicted, the defendant offering no evidence at all. We think the defendant failed to prove any breach of this warranty. The statement in the opinion of the district court judge was not evidence of facts which would justify a jury in finding a breach of the warranty, and there was nothing in the decree of the district court from which it could be inferred that the injury was sustained by, or that the liability was imposed upon, the plaintiffs in consequence of any act that could be construed into a breach of the warranty. We think, therefore, that the judge was correct in refusing to dismiss the complaint upon the ground that there was a breach of warranty. There was no request to submit this question of a breach of the warranty

to the jury; and, as the parties by their acquiescence submitted to the trial judge every question of fact at issue, we would not be justified in reversing this judgment, unless there was no evidence to sustain the verdict.

The question as to the statute of limitations arises under the following clause of the policy:

"It is also agreed that all claims under this policy shall be void unless prosecuted by suit at law within twelve months from the date of the loss, any statute of limitation to the contrary notwithstanding."

The collision occurred on the night of November 9, 1893. The decree of the district court was entered on April 16, 1895, and the final decree of the district court, after the appeal to the circuit court of appeals, seems to have been entered on the 27th of June, 1896. The action was commenced on May 10, 1897. Under the policy, however, the defendant was not to be liable until the liability was determined by a suit at law, and it was necessary for the insured to defend the claim against the boats injured; the policy providing that it shall be lawful and necessary for the insured "to sue, labor, and travel for, and to make all reasonable exertions in and about, the defense, safeguard, and recovery of the said vessels and cargoes, or any part thereof, without prejudice to this insurance." Under the policy it is quite clear that it was the duty of the insured to defend against the claim, and that the loss under the policy cannot be said to have accrued until, by the determination of the court, the insured was finally compelled to pay. By the policy the insurance was to indemnify the insured for loss and damage arising from, or growing out of, any accident caused by any collision and (or) stranding. There was no loss or damage sustained by the defendant, within the terms of this policy, until the insured had been compelled to pay the claims of the owners of the vessels; the contract of insurance being simply for indemnity. Any action brought by the insured under this policy prior to the time that they had paid the judgment of the admiralty court imposing a liability upon them for the loss of the barges composing the tow would have been premature, as, until such payment, no liability arose on behalf of the insurance company to pay under a contract to indemnify the owners of the tugs for any loss or damage arising from, or growing out of, a collision. Under the policy, therefore, the "date of the loss" was not until the final decision of the United States court imposing a liability upon the tugs covered by the insurance, and its payment by the plaintiffs.

No other question was presented on this appeal, and we think that the judgment appealed from is right, and it is affirmed, without costs. All concur.