[No. 12920.   Department Two.   February 9, 1916.]

ANNA DAVIES, *Respondent*, v. MARYLAND CASUALTY COMPANY, *Appellant*.[1]

INSURANCE—INDEMNITY INSURANCE—PAYMENT OF JUDGMENT. The execution of notes by an insolvent coal company in satisfaction of a judgment recovered by the widow of an employee, is a mere subterfuge and not a payment of the judgment, where the company was indemnified by a policy of indemnity insurance, which it at the same time assigned to the judgment creditor in consideration of the immediate cancellation and return of the notes, the intention being to enable the creditor to sue on the policy as though the assured had in fact paid the judgment.

SAME—INDEMNITY INSURANCE—PREPAYMENT OF JUDGMENT—WAIVER. Where an insurer on an indemnity policy undertook the defense of an action against the employer, it assumed a feature of a liability contract as distinguished from an indemnity contract, and waived the right to insist that the assured pay the judgment before action on the policy.

CORPORATIONS — CONTRACTS — AFTER FORFEITURE AND RECEIVERSHIP —VOID OR VOIDABLE. Where an insolvent coal company, after its name had been stricken for failure to pay its license fees and its assets had thereupon passed to a receiver, assigned to its judgment creditor an indemnity policy indemnifying it on account of the judgment, in exchange for an attempted satisfaction of the judgment, in order to permit the creditor to sue on the policy, as though the judgment had in fact been paid, the assignment was not void but voidable, the receiver having acquiesced therein, and the indemnity company cannot set up the invalidity of the assignment.

APPEAL—REVIEW—HARMLESS ERROR. Reversible error cannot be predicated on misconduct of counsel where it is clear that the verdict of the jury could not possibly have been affected thereby and the verdict should have been directed as rendered.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 18, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon an employer's liability policy.   Affirmed.

*John W. Roberts* and *Geo. L. Spirk*, for appellant.

*Brady & Rummens*, for respondent.

[1]Reported in 154 Pac. 1116; 155 Pac. 1035.

BAUSMAN, J.—Plaintiff's husband was killed in a mine of the Rose-Marshall Coal Company when that company had a policy of indemnity from the casualty company. After prolonged litigation, including an appeal to this court (*Davies v. Rose-Marshall Coal Co.*, 74 Wash. 565, 134 Pac. 180), judgments for $15,000 were obtained by the widow and her son in consolidated actions against the coal company. The present suit against the casualty company alone was brought by the widow as the coal company's assignee of the policy. Judgment being given against the casualty company for $5,000, its full amount, the casualty company appeals.

In addition to alleged trial errors, which will be discussed later, the appellant contends that the coal company had never paid the loss and thus put itself in a position where, by the policy, it could ask reimbursement; second, that there was nothing assignable in this policy before that; third, that the assignment was not only without consideration, but in bad faith.

The coal company was incorporated in 1910, the policy issued in September of that year, and the death of Davies occurred in December following. That the coal company is utterly insolvent is clear. The Davies judgment was first recovered in June, 1912, and, after the appeal here, was made final below in November, 1913. A receiver of the coal company, appointed in March, 1914, before the present action but after the assignment of the policy, found no assets. The only other asset the company had, between the date of the Davies judgment and the commencement of this action, was a leasehold interest in coal lands, forfeited at some uncertain date after the accident. The policy we shall construe as intended to reimburse, and not to prepay, the assured. It resembles the generality of these contracts, but does lack some features that are common in them. Thus, the insurer, while engaging to defend suits, did not in terms exclude the assured itself from defending. Neither did it forbid an as-

signment of the policy. It permitted cancellation by the insurer at any time on five days' notice, with partial refund of premium. The suit of Davies against the coal company was defended from the beginning by the insurer, with whom there is no evidence that the coal company in any way interfered.

Plaintiff admits that the policy is one solely of reimbursement, and that nobody could sue the insurer until the employer had paid the judgment; but the employer, she argues, had in fact paid the judgment, after which it assigned to her the then actionable policy for a valuable consideration.

The facts are that the insolvent coal company executed notes of $17,000 to Mrs. Davies, that she, on the same day, gave them all back, satisfied the judgment, and took a written assignment of the policy. In our opinion, this transaction was but a subterfuge. We have, of course, held in *Seattle & S. F. R. & Nav. Co. v. Maryland Casualty Co.*, 50 Wash. 44, 96 Pac. 509, 18 L. R. A. (N. S.) 121, that an employer may make by notes such a payment to a creditor employee as will sustain a suit for reimbursement from one of these insurers before the notes are paid. In that case, though, the assured employer was not insolvent. When it gave notes, it gave something valuable. Here, insolvency made the notes presumptively worthless. But other facts here are still stronger. The notes were hardly issued until they were handed back. Not only were they given back immediately, but they were actually issued with an ill-concealed understanding that this should be done immediately. The maker practically never took its hands off them. It never expected to pay them. The payee's own testimony leaves it clear that she expected to return them immediately, satisfy the judgment, and get the policy. Moreover, what she gave back was not $5,000 of these notes, but all of them. She satisfied a judgment for $17,000 in exchange for a right to sue the casualty company in not to exceed $5,000; all this in a few hours. The transaction cannot be sustained as a payment by the coal company.

If, then, plaintiff's right to sue the casualty company were to depend on plaintiff's own theory, her case must fail. But other facts require our consideration, and we must enter on a discussion beyond, to be sure, the scope of the briefs on either side, but indispensable to justice in this case as well as to a proper view of these contracts in the future.

The Davies claim against the coal company was long resisted by the casualty company. To reimburse for such a claim, when established by judgment and paid, was the purpose of its contract. The judgment has established that claim. Nothing remains except a form. The casualty company in effect says to Mrs. Davies that, if the coal company will pay her at one end of the desk, the casualty company will repay the coal company at the other end. Not one thing besides, does it argue, is wanting to its liability except this formula. On that process it insists, not because when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim, or even a salvage interest against the coal company or its assets, but because it wishes the thing done in just that way. It will pay a moment after, not a moment before, the coal company pays. If the latter will but get a loan for a few moments from some one else and pay the judgment, then the casualty company will hand it a check, perhaps long previously prepared.

Such mummeries are ill-favored by the law. Technicality, indeed, is not only respectable, but is to be enforced by courts when even a remote right is exposed to danger. When technicality is invoked, however, to avoid an obligation morally established, the common law usually finds in its arsenal some weapon with which to confront it and to make that a legal which is already a moral debt. The actuary of the casualty company undoubtedly reckoned on paying a loss thus earned. It must be assumed that reserves are not calculated upon an escape through the chance of the assured's insolvency after liability to the employee. It is the executive branch of the

insurer that, looking to the precise words of contract, may feel itself justified in adding casual gains from situations like these, where some claims will be perfectly established, be morally complete in every respect, but where the employer, not allowed by the insurer to pledge or assign the policy one minute in advance, will be unable to get so much as a temporary loan.

Employers' policies are of two sorts. One, called a liability contract, obliges the insurer to pay the loss without first requiring the assured to do so; the other type, of which the present is one, is called an indemnity policy, and imposes only reimbursement after the employer has paid the debt. This last being found better for the insurer, the liability policy has gradually been displaced by the other.

Tracing, now, the growth of the indemnity policy up to its present phraseology, its basic principle was that the assured would not only first pay the loss, but that he would attend to his own defense. The indemnifier, standing aloof, would pay the final bill, providing the defense had been honestly conducted by the employer. Generally speaking, the practice, as well as the contract of the indemnifier to take over the defense, came later. To do that under the old liability policy was natural, but under the pure indemnity policy was not natural. The insurer desired to defend through his own agent because he could do so more cheaply than the employer, who would charge the expenses to him, and because he could be more certain of the good faith of that defense. He, accordingly, wished to become a mere reimburser in law while a defender in fact.

But in taking over the defense, the insurer assumes a feature of a liability contract as distinguished from an indemnifying contract. When an accident occurs, he hurries to protect the assured and himself from liability by defeating the claimant in advance. But when the claimant has been successful, the insurer, falling back on the other theory, argues that he is not a liability insurer, only a reimburse-

ment insurer. This shifting subjects him to the familiar doctrine of estoppel by election in inconsistent positions. The law does permit him to have the exemptions of a reimbursement engagement, but he cannot have the benefits of a liability engagement at the same time. If he wishes to rely upon the former, he may continue to do so under the words of his contract and leave the defense to the assured. When he takes over the defense himself, he will not be heard to say that he has not assumed the position of a liability insurer.

Accordingly, we hold that, by conducting the defense, the employer's insurer waived the right to exact prepayment by the assured, and that, on the final judgment of Davies against the coal company, "loss" matured. The policy, as one of reimbursement, could then be either sued on by the assured or be assigned.

Such a consequence of the insurer's acts would seem, aside from any justice to the employee, to be but fair to the employer also; for the latter, whose solvency and protection are supposed to be promoted by these policies is, as this feature is now taken advantage of, exposed to a willingness and even a desire in the insurer to see him not succeed but fail. In fact, they do sometimes fail because they are left unassisted by their insurer in just such a juncture, for the employee's judgment often ruins embarrassed employers, notwithstanding they hold in their hands the very contract that was supposed to save them. They are told by the maker of that contract that he will save them when they have saved themselves. If that is to remain permissible in these insurers, it will not remain such in this state when they take over the defense and costs of a suit. Such a privilege in their contracts involves a question of public policy. It is a privilege that would be grudgingly extended, if ever extended at all, to any private individual, since it increases the temptations to prolong litigation and puts in the hands of a stranger, who may gain by harshness, a controversy that ought to be left to those whose previous relations invite reconciliation and concord.

This brings us to the assignment that was made. It is clear that, before this was done, the coal company's name had been stricken by the secretary of state from the public rolls for want of paying its annual licenses during the prescribed period. In consequence of this, the assets of the corporation passed to its trustees to be disposed of, as the statute expresses it, under the order of the court in appropriate proceedings. Just what proceedings would be appropriate are not specified by the statute. The receiver, appointed after the assignment of the policy, acquiesced in that transaction, of which he was plainly cognizant and in which he appeared to assist.

Whether the act of assigning the policy in exchange for a satisfaction of the judgment was *ultra vires* under our statutes which, though intended to be revenue measures must necessarily be enforced with some rigor to produce the desired revenue, is a question not necessary to be determined. The assignment, we are confident, was not void but voidable; and if it was voidable, it was not the casualty company that could complain of it. *Voltz v. National Bank*, 158 Ill. 532, 42 N. E. 69, 30 L. R. A. 155. To the latter it should be unimportant which it pays when the loss is due; and the corporate acts that are in excess of corporate power and yet unassailable by third parties are too numerous to mention. Neither creditors, if any such exist (which the record does not show), nor the receiver have sought to disturb this transaction.

In view of the foregoing, the judgment of the lower court must be affirmed. Nor can we reverse it for misconduct of plaintiff's counsel, either as witnesses or as advocates before the jury. The misconduct complained of is, indeed, such as the lower court should have reprehended, for defendant's counsel made to this misconduct timely and proper objection. But no case can be reversed for misconduct of counsel when it is clear that the verdict of the jury could not possibly

have been affected by it. Such is the present instance. The jury had to bring in a verdict of the $5,000 sued for or no verdict for plaintiff at all. Under the undisputed testimony in this case, plaintiff was in fact entitled to an instructed verdict in her favor for the amount of the policy. It is in that sum that the jury, though the case was tried by both parties under a mistaken theory, have given their verdict.

Judgment affirmed.

MORRIS, C. J., HOLCOMB, and MAIN, JJ., concur.

PARKER, J., concurs in the result.

## ON PETITION FOR REHEARING.

### [Decided March 17, 1916.]

PER CURIAM.—In a petition for rehearing, counsel complains that we have not adverted to *Ford v. Aetna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69. There the injured person, after judgment against the employer, sued the insurance company without assignment of the policy, arguing privity with the insurer on the theory that the contract was really for his benefit or had been made so by the insurer's conducting the defense. We denied that privity of contract there and have not, by any expression whatever, allowed it to Mrs. Davies here. The difference is that Mrs. Davies sues as assignee of the policy. We have simply made the policy an asset of the employer after defense by the insurer and judgment against the employer. To shake the soundness of our conclusions, the petitioner offers no argument, largely citing cases where, as in our *Aetna* case, the injured plaintiff sought unsuccessfully to establish privity. From our views on this subject, we see no evil results, but on the contrary, relief both to employers and to employees in a class of cases, small but of downright injustice, in which, when insolvency happens to the employer, the insurer escapes a liability actually earned by premium and covered by reserves.

While the *Aetna* case chiefly discussed privity, it closed with another feature in which our present decision is not

consistent with it. The plaintiff there had also garnished the insurance company as his employer's debtor, and, as to this indebtedness, we did say that there could be none, notwithstanding defense by the insurer. In that feature we are content to modify the *Aetna* case.

The petition is denied.