### No. 21,537.

CHARLES E. BLANTON, a Minor, by WILLIAM H. BLANTON, His Next Friend, *Appellee,* v. THE KANSAS CITY COTTON MILLS COMPANY and (THE KANSAS CITY CASUALTY COMPANY, Garnishee, *Appellant.*)

### No. 21,538.

WILLIAM LUBEK, *Appellee,* v. THE KANSAS CITY COTTON MILLS COMPANY and (THE KANSAS CITY CASUALTY COMPANY, Garnishee, *Appellant.*)

### No. 21,539.

ERNEST MYERS, a Minor, by LYDIA MYERS, His Next Friend, *Appellee,* v. SIMON A. GARDNER and (THE KANSAS CITY CASUALTY COMPANY, Garnishee, *Appellant.*)

#### SYLLABUS BY THE COURT.

1. INDEMNITY INSURANCE—*Indemnity Bond—Judgment against Insolvent Employer—Casualty Company as Garnishee.* Where a casualty company in an employers' insurance contract agrees to indemnify the insured against loss, including expenses arising or resulting from claims upon the insured for damages on account of bodily injuries to employees, and wherein it is provided that the company shall have notice of accidents and shall not be responsible for settlements made by the employer unless authority in writing is given to the insured, excepting expenses of emergency relief, and wherein it is stipulated that the company shall investigate all accidents and defend all suits for damages unless it elects to settle the claims or suits, and the company, acting under the policy, investigates accidents and adjusts and pays claims for losses, and assumes exclusive control of the defense of suits upon the claims of employees of the insured, the contract should be regarded as one to indemnify the insured against liability, and the casualty company is therefore subject to garnishment at the suit of the employees when the insured is insolvent.

2. SAME—*Case Distinguished. Carter v. Insurance Co.,* 76 Kan. 275, 91 Pac. 178, distinguished.

3. SAME—*Indemnity Bond—Subsequent Modification of Agreement.* The insured employers were not operating under the workmen's compensation law when the policies were issued, and attached to them were riders excepting the insurer from claims for compensation under that law. Before the end of the insurance period the insured came under the compensation law. *Held,* that it was competent for the parties to detach the rider and modify the contract by an agreement that the unearned premium should stand as insurance for compensation injuries for the remainder of the insurance year; and also *held,* that the evidence in the case supports the theory that such an agreement was made.

Appeals from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed May 11, 1918. Affirmed.

*E. S. McAnany, M. L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *D. A. Murphy,* of Kansas City, Mo., for the appellant; Samuel Maher, of Kansas City, of counsel.

*J. O. Emerson, David J. Smith, T. F. Railsback, T. A. Pollock,* and *K. P. Snyder,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: These are appeals by the Kansas City Casualty Company from judgments rendered against it in garnishment proceedings.

Three actions are involved, each brought by an employee against his employer to recover damages for personal injuries, in which judgments against their employers were obtained. The defendants. in those actions held policies of insurance issued by the casualty company, and in the actions mentioned it took complete charge of the litigation for the defendants. The plaintiffs were unable to enforce payment of the judgments, and they garnished the casualty company, which answered, in each case denying liability to the defendant. Plaintiffs contested the answers, and the evidence upon the issues thus raised was submitted at one hearing to the court without a jury. No findings of fact were made, and the court rendered judgments against the casualty company for the amounts of the claims established.

. The issues were the same in the three actions, except that in those against the Cotton Mills Company there is an added feature by reason of the fact that at the time of the injuries it was operating under the provisions of the workmen's compensation law, and it is claimed by the casualty company that under the policy it is not liable on account of injuries within the scope of that act. It also claims that the policies issued are contracts of indemnity against loss sustained, and that the obtaining of judgments against the employers, which had not been paid, was not sufficient to render it liable as garnishee. The policies in question were designated as "employers' liability policies," and in them the casualty company agreed "to indemnify the assured, described in the warranties hereof, within the amounts as expressed herein, against loss, including expense arising or resulting from claims upon the assured for damages on account of bodily injuries," etc., to an employee. It was stipulated that the assured should give the casualty company immediate notice of any accident to an employee and of any suit resulting therefrom, and it was further stipulated that—

"The company is not responsible for any settlements made or any expense incurred by the assured, unless such settlements or expenditures are first specifically authorized in writing by the company; except that the assured may provide at the time of the accident, at the expense of the company, such immediate surgical relief as is imperative."

There was also a provision limiting the amounts for which the casualty company would be liable, and also stating—

"In addition to these limits, the company will, at its own cost (court costs and all interest accruing after entry of judgment on such part thereof as shall not be in excess of the limits of the company's liability as hereinbefore expressed, being considered part thereof) investigate all accidents and defend all suits even if groundless, of which notices are given to it as hereinbefore required, unless the company shall elect to settle the claim or suit."

The provision usually contained in policies of this character, that no action could be maintained by reason of a judgment against the assured unless the latter had sustained a loss by satisfying the judgment, is not found in any of the policies involved here. It appeared from the evidence that the casualty company had in other instances adjusted claims and paid judgments that had not been already satisfied by the

assured, and that it had advertised its business as including in its scope the adjustment of all claims, payment of all attorney's fees, defense of all suits, the payment of all judgments up to $5,000, and the payment of court costs.

The main question raised on these appeals is whether or not there can be a liability against the casualty company for accidental injuries to the employees of the insured, until the latter pays the claims for the injuries and losses sustained. The casualty company contends that under the rule of *Carter v. Insurance Co.*, 76 Kan. 275, 91 Pac. 178, its contract was indemnity against loss, and that no loss was sustained by the insured until payment had been made. The contract in the Carter case differs materially from those involved herein. Aside from one stipulation there was the same ambiguity in that contract as in these in regard to whether liability was included in the term *loss*, and whether it was the intention of the parties that the insurance company should be substituted for the insured so far as liability for accidental injuries and death was concerned. While several of the provisions of that contract indicated a substitution of the insurer for the insured, and that it was insurance against liability, it contained the following positive stipulation:

"No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within sixty days from the date of such judgment, and after trial of the issue." (p. 276.)

As we have seen, this clause was wholly omitted from the contracts in question. In the decision of that case it was said that "This provision leaves no doubt of the intention of the parties, which was that the insurance company was not required to pay anything because of the policy until losses had been paid by the assured in satisfaction of a judgment." (p. 278.) It was there held that the obligation of the contract did not extend beyond the insurer and the insured— that it did not inure to the benefit of the injured employees— and that the insurer was only bound to reimburse the insured for the losses he was compelled to pay. The "no action" provision was deemed to be so specific and controlling as to overcome other stipulations in the contract pointing to insurance

against liability, and also to prevent an estoppel against the insurer by reason of having taken control of the litigation and made the defense for the insured. The provisions of the contracts without this clause and the action of the defendant in giving a practical interpretation of the provisions of the contract strongly tend to show the purpose of the parties to have been that the insurer should be substituted for the insured, and also that it was intended as an insurance against liability. Attention is called to the use of the word *indemnify* in the contract, which it is contended carries the idea of a reimbursement for losses; but the term has other meanings and is no more controlling than the statement at the head of each of the policies that it is a "liability policy."

As against the theory that the insurer is not concerned as to accidents or liabilities arising from them, there is the stipulation that the insurer shall be given immediate notice of an accident and of any suit resulting from it. The obvious purpose of such a notice is that the insurer may protect itself against liability, and that this was the intention is made manifest by the action of the insurer in settling claims for such liabilities without waiting for the insured to settle or pay them. In order that the insured may intelligently carry out this plan it is provided that the insurer may inspect the plant, works, machinery, and appliances used by the insured, and shall also have access to its books and records and in that way determine the nature of the injury and the extent of the liability. While the insured is not denied the right to make settlements with its injured employees, it is expressly stipulated that, except for emergency surgical relief at the time of the accident, the insurer will not be responsible for any settlement made unless written authority therefor is given by the insurer. In view of the fact that plaintiffs were paying for insurance protection and would lose that protection if they settled a claim without the consent of the insurer, the clause was almost equivalent to a stipulation forbidding them to negotiate a settlement with an injured employee. Under the contract the insured was permitted to coöperate with the insurer in negotiating a settlement, but it was practically excluded from the control of settlements.

To make the control of the insurer more effective it was

stipulated that it should investigate all accidents of which it had notice, and its course of action was not only to investigate such accidents, but it went farther and made settlements for liability arising from the accidents. This control was continued after the investigation and throughout any litigation that might arise upon the claims based on accidents, because in the contract it was stipulated that the insurer should take charge of any litigation that arose and should at its own cost defend all suits brought, whether they were groundless or real, unless it should elect to settle the claims or suits without contest. These provisions show that the obligations of the contract rested upon the insurer from the time the accident occurred down until the liability resulting from them was settled and discharged.

Instead of being exempt from liability until prepayment of claims by the insured, the insurer practically put itself into the place of the insured, so far as settlements with employees and payment of their claims were concerned, and if it had been the intention of the parties that no liability should attach to the insurer until payment had been made by the insured it would have been very easy to have made that statement in some such way as was done in the Carter case. There being ambiguity in the contract respecting the kind of insurance intended, extrinsic circumstances showing the practical interpretation placed upon the contract by the parties may be and was received. The casualty company not only designated its contracts as "liability policies," but in an advertisement published in a newspaper in March, 1914, as to the character of the policies, it stated:

"Every man in business, every employer of labor needs liability insurance. It safeguards you against possible damages arising from injury or death to those who work in your shop, factory or store. The liability insurance issued by the Kansas City Casualty Co. fully protects you. Note the wide scope: We adjust all claims. We pay all attorneys' fees. We defend all suits. We pay all judgments up to $5,000. We pay all court costs."

In addition to this, a former manager of the casualty company testified in its behalf, and stated that "our policy, as I have stated, was an employer's liability policy and our policy indemnified the assured against his legal liability for personal injuries." These things in connection with the action of the

casualty company in making settlements without waiting for prepayment by the insured show that the casualty company understood its contracts to bind it for liability, and not for mere indemnity.

There is a conflict in the authorities on this branch of the law. Some of them interpret contracts containing stipulations similar to those included in the policies in question as indemnity only and hold that prepayment of losses is essential to recovery. Others treat them as indemnity contracts because of the inclusion of the "no action" provision. Very many treat them as liability contracts where the "no action" provision is omitted. In a few cases courts have gone to the extent of holding policies containing the "no action" provision as contracts to pay liabilities. The authorities supporting the different theories, and illustrative of the conflict, are grouped in a note in 48 L. R. A., n. s., 184. Some of the cases tending to support the interpretation which we have placed on the contracts involved here are *American Employers' &c. Ins. Co. v. Fordyce,* 62 Ark. 562; *Stephens v. Pennsylvania Casualty Co.,* 135 Mich. 189; *Standard Printing Co. v. Fidelity & Deposit Co.,* (Minn.) 164 N. W. 1022; *Patterson v. Adan,* 119 Minn. 308; *Elliott v. Ætna Life Ins. Co.,* 100 Neb. 833; *Sanders v. Insurance Co.,* 72 N. H. 485; *Lewinthan v. Travelers' Ins. Co.,* 113 N. Y. Supp. 1031; *Clark v. Bonsal,* 157 N. Car. 270; *Maryland Casualty Co. v. Peppard,* (Okla.) 157 Pac. 106; *Fenton v. Fidelity & Casualty Co.,* 36 Ore. 283; *Pickett v. Fidelity Company,* 60 S. Car. 477; *Davies v. Maryland Casualty Co.,* 89 Wash. 571; *Hoven v. Employers' Liability Assurance Corporation,* 93 Wis. 201.

The next contention is that in no event can there be a liability for the injuries to Lubek and Blanton, as their employer, the cotton mills company, was operating under the workmen's compensation law, and compensation injuries were expressly excepted from the obligations of the contract. No such exception was contained in the policy when it was produced at the trial, but there is testimony that a rider was attached to the policy when it was written, which was later detached. The cotton mills company had not elected to come under the compensation law when the policy was issued, but did so in March, 1913. The evidence tended to show that the casualty company, through its officer, then agreed to cover compensation cases

under the policy without an additional premium, in view of the short time in which the policy would remain in force, and that the rider clause mentioned was torn off the policy. Some testimony was offered to the effect that an additional premium was demanded, but the cotton mills company declined to pay more insurance, and then, instead of returning the unearned premium, the agreement was made to cover compensation cases the remainder of the year for the premium paid. The retention of the unearned premium, instead of its return to the insured, would be sufficient consideration for the change made in the contract through the detaching of the rider and making the insurance cover compensation injuries. There is a sharp dispute in the testimony as to when this agreement was made or when the rider was torn off the policy, but there is evidence to support the conclusion that both occurred before the injuries to Lubek and Blanton were sustained. As there were no special findings, and the general finding was in favor of the plaintiffs, it must be deemed that the court accepted the testimony favorable to plaintiffs as true and discredited the conflicting evidence given in behalf of the casualty company.

The judgment is affirmed.