### GRIFFIN v. GENERAL CASUALTY & SURETY CO.

1. INSURANCE—AUTOMOBILE INSURANCE—AMBIGUITY—POLICY TO BE LIBERALLY CONSTRUED.

> Obscure or ambiguous provisions in a policy insuring an automobile owner against liability are to be liberally construed; the language used being of insurer's own choosing.[1]

2. SAME—LIABILITY AND INDEMNITY INSURANCE—OBSCURE WORDING OF POLICY—ESTOPPEL.

> Where a policy insuring an automobile owner against liability for personal injuries to third persons was so obscurely worded as not to be clear whether it was intended to be a liability or an indemnity contract, and the insurer, under its policy, took exclusive charge of the defense of an action for personal injuries against the insured, insurer is estopped to deny liability for the amount of the judgment rendered against the insured on the ground that the insured had not yet satisfied said judgment.[2]

Error to Wayne; Marschner (Adolph F.), J.   Submitted June 10, 1925.   (Docket No. 79.)   Decided July 16, 1925.

[1]Motor Vehicles, 28 Cyc. p. 50 (Anno);  [2]Id., 28 Cyc. p. 50 (Anno).

On giving note as loss or damage within condition of contract of indemnity, see notes in 9 L. R. A. (N. S.) 478; 20 L. R. A. (N. S.) 956; 48 L. R. A. (N. S.) 196.

Assumpsit by Bradley P. Griffin against the General Casualty & Surety Company on a policy of insurance. Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*Wilkinson, Lowther, Wilkinson & O'Connell,* for appellant.

*Julius J. Lechner (William F. Connolly* and *Francis W. Allen,* of counsel), for appellee.

STEERE, J.   On April 12, 1920, defendant wrote plaintiff a so-called one-year liability insurance policy on his Cadillac Victoria automobile.   The premium was $46.34, which he paid defendant.   In May, 1920, while the auto was being driven by plaintiff's minor son, Philip Griffin, with his father's consent, it collided with a taxicab carrying a passenger named Charles Smith, who was injured.   Criminal proceedings were first instituted against Philip in the recorder's court for reckless driving.   Though not required by the terms of its policy to do so, defendant's counsel represented Philip at the trial of that proceeding at the request of his father, "as a matter of courtesy" to a policy holder.   Subsequently the taxicab passenger, Charles Smith, began a tort action in the Wayne county circuit court against plaintiff herein and his son Philip to recover damages for the injuries he suffered in the collision.   As stated in defendant's brief, defendant's counsel appearing in that case "as attorney for Charles Smith and the defendant here, under Condition 'C' of its policy, assumed control of the case for Bradley P. Griffin and Philip Griffin, his son."   The trial resulted in a judgment in Smith's favor of $2,000 and costs taxed at $64.80.   The insurance company refused to pay the judgment.   Griffin testified he was practically bankrupt at that time and to escape a threatened body execution he gave a note for the amount of the judgment, costs and interest,

with an assignment of the judgment as collateral. The assignment was filed in this case. The note was past due and unpaid at the time of this trial, and it was conceded that the judgment "was entered and never satisfied." Following the judgment in Smith v. Griffin plaintiff brought this action on his policy to recover the amount of liability adjudged against him. Upon the trial a jury was called and considerable testimony taken. Both parties moved for a directed verdict, and after some discussion it was agreed between counsel the issues raised were purely questions of law, the jury was dismissed, the case submitted to the court and taken under advisement. An opinion was later filed denying defendant's motion and granting plaintiff's, with judgment in his favor for $2,064.80 and costs taxed at $70.83.

Defendant's contention is that, under the terms of the policy plaintiff held, he is only indemnified against actual pecuniary loss, that the note he gave to avoid threatened imprisonment was not taken in settlement of the judgment, which concededly has not been satisfied, and, not having paid the judgment, he has suffered no loss.

Amongst the many provisions of the policy are the following:

"The General Casualty & Surety Company, hereinafter called the company, does hereby agree to indemnify the assured designated in the said schedule against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting at any time therefrom, accidentally suffered or alleged to have been suffered by any person or persons not employed by the assured, caused by the automobile vehicles described in statement numbered 5 of the schedule, * * * subject to the following conditions: * * *

"Condition C. If thereafter any suit is brought against the assured to enforce such a claim for damages, the assured shall immediately forward to such executive office of the company every summons or other

process, and the company shall defend such suit, whether groundless or not; the expenses incurred by the company in defending such suit, including court costs and all interest accruing after entry of judgment, will be borne by the company irrespective of the limits of liability expressed in the policy. The company shall have the right to settle any claim or suit at any time. In the event that an execution on a judgment against the assured be returned unsatisfied in an action by a person who is injured or whose property is damaged, the judgment creditor shall have a right of action against the company to the same extent that the assured could have had, had he paid the judgment.

"Condition D. The assured shall not voluntarily assume any liability, nor incur any expense or settle any claim unless such settlement or expenditures are first authorized in writing by the company; except that the assured may provide at the time of the accident at the cost of the company such immediate surgical relief as is imperative.

"Condition E. In case of payment of loss under this policy the company shall be subrogated to all rights of the assured against any person or corporation as respects such loss."

Undoubtedly the giving of a note by the assured to liquidate a judgment amounts to an actual loss under a contract of indemnity if the judgment creditor accepts it as payment of the original debt; but in this case it is conceded that although forbearance from body execution followed plaintiff's giving a note for the amount with assignment of the judgment as collateral, the judgment was "never satisfied." The transaction suggests, however, that if defendant's construction of the policy is right and plaintiff is remediless until he pays the judgment, that type of insurance affords scant protection and is of little value to an impecunious assured when shadowed by the menace of a judgment against him in a tort action for personal injury.

In dealing with indemnity insurance the authorities have recognized two classes of policies, sometimes

called respectively "liability contracts" and "indemnity contracts," based on the distinction that in one class the policy is construed as enforceable when liability of the insured is shown, while in the other class it only becomes enforceable when the insured has actually sustained some damage or loss, as by paying a judgment against him coming within the scope of the policy.

In 36 C. J. pp. 1057, 1058, it is said of the determining factors:

"Where the policy provides that insured shall immediately notify the company in case of accident or injury, that the company would defend actions growing out of injuries, in the name of insured, and that insured should not settle any claim or incur any expense without the consent of the company, it is generally held to be a policy of indemnity against liability for damages, and is not a mere contract of indemnity against damages." Citing numerous decisions, including *Stephens* v. *Casualty Co.*, 135 Mich. 189 (3 Ann. Cas. 478).

The *Stephens Case* is, however, distinguishable from this in the wording of the indemnity and not decisive of the exact question raised here; but the court there said that—

"when a final judgment was rendered against the railway company the liability under defendant's contract became fixed, and it was obligated to pay the amount of the indemnity, although the judgment had not been paid." ·

While the legal distinction between indemnity against liability and indemnity against loss is generally recognized and policies so classified, the authorities are not in harmony as to whether liability policies phrased similar to this against loss from liability to third persons are to be classified as contracts of liability or of indemnity.

If it was the insurer's desire, or intent, that in case of accidental injuries suffered to any person not em-

ployed by the assured for which the latter became liable no rights under his policy would accrue to him until he had liquidated his liability therefor, whether determined by amicable adjustment or final judgment, it manifestly could be so clearly expressed in the policy by a distinct and unambiguous provision that there could be no question; but the provision on that subject in policies similar to this have often been couched in such ambiguous language, or with such qualifying conditions, that even courts of last resort have been unable to construe and classify them alike. A comparative examination of the cases cited by both sides and many others to be found is convincing of the following conclusions as to how that situation has developed:

"Tracing, now, the growth of the indemnity policy up to its present phraseology, its basic principle was that the assured would not only first pay the loss, but that he would attend to his own defense. The indemnifier, standing aloof, would pay the final bill, providing the defense had been honestly conducted by the employer. Generally speaking, the practice, as well as the contract of the indemnifier, to take over the defense, came later. To do that under the old liability policy was natural, but under the pure indemnity policy was not natural. The insurer desired to defend through his own agent because he could do so more cheaply than the employer, who would charge the expense to him, and because he could be more certain of the good faith of that defense. He, accordingly, wished to become a mere reimburser in law while a defender in fact.

"But in taking over the defense, the insurer assumes a feature of a liability contract as distinguished from an indemnifying contract. When an accident occurs, he hurries to protect the assured and himself from liability by defeating the claimant in advance. But when the claimant has been successful, the insurer, falling back on the other theory, argues that he is not a liability insurer, only a reimbursement insurer." *Davies* v. *Maryland Casualty Co.*, 89 Wash. 571 (154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D, 395).

We deem it unnecessary to review the conflicting authorities on this branch of the insurance law in other jurisdictions. The subject will be found amply discussed in *Patterson* v. *Adan*, 119 Minn. 308 (138 N. W. 281, 48 L. R. A. [N. S.] 184) ; *Blanton* v. *Cotton Mills Co.*, 103 Kan. 118 (172 Pac. 987, L. R. A. 1918E, 541), and cases there cited.

This policy is defendant's production. The language adopted in the insuring clause and following conditions from "A" to "L" inclusive are of its own choosing. Technical construction of such policies is not viewed favorably (1 Joyce on Insurance [2d Ed.], § 212), and by a long line of authority obscure or ambiguous provisions are to be liberally construed (*Id.* § 221).

The insuring clause of this policy read in the light of provisions and conditions which follow is not clear, nor conclusive of but one meaning. So read it savors of both an indemnity and liability contract. Against the theory that the insurer is immune from liability with no direct concern in the accident until the assured has actually paid the loss even though contested and determined by a final judgment, the policy obligates him to give immediate notice of a possibly compensable accident with all particulars obtainable and if any action is brought against him to promptly advise the insurer, requires the latter to defend the case whether groundless or not and authorizes it to settle "any claim or suit at any time" without his consent, forbids him from assuming any liability or incurring any expense, except imperative surgical relief at the time of the accident, without written authority from the insurer, and in effect takes the whole matter out of his hands.

In the instant case defendant was promptly notified by Griffin of the accident, of the fact that young Griffin had been criminally taken for reckless driving

and of the action brought by Smith for personal injuries. Its attorney first appeared for the defense in the criminal prosecution "as a matter of courtesy" and secured an acquittal, incidentally making a possible point for the defense and getting a line on the evidence in the threatened civil action which followed. It took charge of the defense in that case under the exclusive authority conferred by the policy, practically putting itself in the place of the assured, and contested it to an adverse conclusion. Under such circumstances the claim of estoppel is appealing. As said in *Picket* v. *Fidelity & Casualty Co.*, 60 S. C. 477 (38 S. E. 160, 629), where a policy similar to this was involved:

"One of the objects of the provision authorizing defense of any suit for damages to be made by the insurer, and taking from the insured all right of interference, was to enable the insurer, if possible, to prevent any liability against the insured employer, and this liability which, by the policy, the insurer was to contest, was the liability against which the policy was issued."

Under the policy and facts shown in this case we think applicable the following conclusions of the court in *Patterson* v. *Adan, supra:*

"In a policy such as this, where the company has come into the litigation and assumed exclusive control thereof under its contract, it recognizes a liability, if it fails to defend successfully, to pay the assured the amount of the judgment it so permits to be established, not exceeding the sum stipulated in the policy, and also that, as to the plaintiff, it should be considered that such judgment is a debt due the assured from the company, and not dependent on any contingency."

The judgment will stand affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.