GEORGE GOERSS, RESPONDENT, v. THE INDEMNITY COMPANY OF AMERICA, A CORPORATION, GARNISHEE OF RALPH T. ZAUSCH, APPELLANT.*—3 S. W. (2d) 272.

St. Louis Court of Appeals.   Opinion filed March 6, 1928.

*Corpus Juris-Cyc References: Contracts, 13CJ, section 397, p. 456, n. 9; Garnishment, 28CJ, section 209, p. 166, n. 94; Liability Insurance, 36CJ, section 4, p. 1057, n. 36; section 14, p. 1062, n. 6.

*W. E. Moser* and *Hensley, Allen & Marsalek* for appellant.

*Frederick A. Wendt, Roy H. Bergmann* and *James J. O'Donohoe* for respondent.

SUTTON, C.—This is a garnishment proceeding. On March 23, 1925, plaintiff obtained a judgment against defendant Ralph T. Zausch for $3000 in the circuit court of the city of St. Louis, in an action brought to recover damages for personal injuries accidentally suffered by plaintiff as a result of being struck by an automobile operated and driven by defendant on a public street in said city. Execution was issued upon the said judgment, and the Indemnity Company of America was summoned as garnishee. The trial of the garnishment proceeding, which was had before the court without a jury, resulted in a judgment in favor of the plaintiff against the garnishee for the sum of $3421.15, being the amount of the judgment in said action for damages, with the interest accrued thereon, and the costs incurred in said action. The garnishee appeals.

The plaintiff grounds his right of recovery against the garnishee upon a liability insurance policy·issued by the garnishee to defendant prior to the accident for which plaintiff obtained judgment against defendant as aforesaid. The provisions of the policy, so far as material here, are as follows:

"The Indemnity Company of America, hereinafter called the Company, in consideration of the conditions, exclusion, limitations, premiums, warranties and statements in the schedule, hereinafter mentioned, hereby agrees with the assured named and described herein, hereinafter called the assured, as follows:

. . . . . . .

"Part V—Liability. 13. To indemnify the assured against loss resulting from claims upon the assured for damages on acccount of bodily injuries and/or death accidentally suffered or alleged to have been suffered by any person or persons not in the employ of the assured or otherwise herein excepted (see paragraph 22), by reason of the ownership, maintenance and/or use of the automobile described herein.

. . . . . . .

"Additional Coverage for Liability and Property Damage. 17. As regards part four, Property Damage, and part five, Liability, the company further agrees: (a) To defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim covered by said parts four and five, whether groundless or not; (b) also to pay all expenses incurred by the company in defending any

suit, including any costs taxed against the assured, and the interest accruing on verdict or judgment; . . . (d) also as regards part five, Liability, to reimburse the assured for the expense incurred in providing such immediate surgical relief as is imperative at the time of the accident.

. . . . . .

"22. As regards parts four and five, applying to property damage and liability, and in addition to the exclusions mentioned in paragraph 19, the policy does not cover and the company shall not be liable. (Here follow clauses a, b and c, not material to the decision of the issues involved on this appeal.)

"Special Provisions. 24. The following special provisions apply to parts four and five, pertaining to property damage and liability, and shall be considered as an addition to the general provisions stated in paragraph 25, and are subject to all exclusions and limitations stated herein pertaining to these parts: (Here follow clauses a, b and c, requiring the assured to give the company immediate notice of any claim for damages or suit against him, excluding him from interfering in any negotiation for settlement, or in any legal proceedings, and from incurring any expense except for such immediate surgical relief as is provided in paragraph 17-c, and giving the company exclusive control of all investigation, adjustments, settlements or defense of suits.) (d) Limitation—No action to recover for any loss and/or expense covered by this policy, arising or resulting from claims upon the assured for damages, shall be sustainable unless brought by the assured for loss and/or expense actually sustained and paid in money by him after actual trial of the issue."

The policy is divided into five parts, twenty-five numbered paragraphs and numerous lettered clauses, which point to each other fore and aft, by an intricate system of cross-references, to explain, supplement or limit their meaning. Part V is six times designated in the policy as relating to liability and four times such designations are made in large capital letters. We call attention to these features as pertinent to the contention of appellant that the policy properly construed undertakes to indemnify the insured merely against loss sustained by him by the actual payment in money of a claim against him, and does not undertake to indemnify him against liability, and that its demurrer to the evidence ought to have been sustained on that ground.

What was said in Matthews v. Modern Woodmen of America, 236 Mo. 326, l. c. 343, 139 S. W. 151, is peculiarly applicable here, as follows:

"Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. They are tendered, ready-made, to and accepted out of hand by plain people, the uninformed

and unlearned, the unwary and confiding. Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos and limitations, hedging liability about and looking to its avoidance. It is not singular then that courts incline to pit judicial astuteness against the astuteness of the policy-maker, the latter planting forfeitures in ambush or open, and the former striving to avoid them.''

It is not disputed that the injury for which plaintiff obtained judgment against the insured was suffered by reason of the ownership and use of the automobile described in the policy. The appellant denies liability under the policy on the sole ground that the insured has not actually paid in money the judgment plaintiff obtained against them. The appellant argues that it is not liable to the insured under the terms of the policy, and is not indebted to him, and that therefore the plaintiff is not entitled to recover from it, by process of garnishment, what the insured owes the plaintiff under the judgment upon which the garnishment is based. In other words, the appellant argues that because the insured has not paid the plaintiff what the insured owes plaintiff, the appellant does not owe the insured anything, and may not therefore be required, by process of garnishment, to pay plaintiff what the insured owes plaintiff, notwithstanding the appellant concedes that if the insured would pay plaintiff what he owes him, the appellant would then instantaneously become indebted to the insured, and would willingly reimburse him for the amount so paid.

In Davies v. Maryland Casualty Company, 89 Wash. 571, the plaintiff's husband was killed in a mine of the Rose-Marshall Coal Company when that company had a policy of indemnity from the casualty company. Plaintiff obtained judgment against the coal company, and then, as the coal company's assignee of the policy, sued the casualty company for the amount of her judgment. It was conceded by the parties that the policy was one solely of reimbursement, and that under its terms there was no right of action against the casualty company until the coal company had paid the judgment. What was said in that case by the court in argument is pertinent here, as follows:

''The Davies claim against the coal company was long resisted by the casualty company. To reimburse for such a claim, when established by judgment and paid, was the purpose of its contract. The judgment has established that claim. Nothing remains except a form. The casualty company in effect says to Mrs. Davies that if the coal company will pay her at one end of the desk the casualty company will repay the coal company at the other end. Not one thing besides, does it argue, is wanting to its liability except this formula. On that process it insists, not because when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim or even a

salvage interest against the coal company or its assets, but because it wishes the thing done in just that way. It will pay a moment after, not a moment before, the coal company pays. If the latter will but get a loan for a few moments from someone else and pay the judgment, then the casualty company will hand it a check, perhaps long previously prepared.

"Such mummeries are ill favored by the law. Technicality, indeed, is not only respectable, but is to be enforced by courts when even a remote right is exposed to danger. When technicality is invoked, however, to avoid an obligation morally established, the common law usually finds in its arsenal some weapon with which to confront it and to make that a legal which is already a moral debt."

The courts of this country have frequently been concerned with policy provisions such as are under review in this case, and they have usually found a way, in pursuit of manifest justice, by one process of reasoning or another, to compel the insurer to answer for the insured's liability, whether the insured had paid his liability or not. [General Accident, Fire & Life Assur. Co. v. Butler's Ice Cream Factory (Tex.), 291 S. W. 674; Matter of Empire State Surety Co., 214 N. Y. 553; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U. S. 173; Juskiewicz v. New Jersey Fidelity & Plate Glass Ins. Co., 206 N. Y. S. 566; Kinnan v. Hurst Co., 317 Ill. 251; Sanders v. Frankfort Marine, Accident & Plate Glass Ins. Co., 72 N. H. 485; Patterson v. Adan, 119 Minn. 308; Reilly v. Linden, 151 Minn. 1; Griffin v. General Casualty & Surety Co., 231 Mich. 642; Stephens v. Pennsylvania Casualty Co., 135 Mich. 189; Davies v. Maryland Casualty Co., 89 Wash. 571; Maryland Casualty Co. v. Peppard, 53 Okla. 515.]

In General Accident Fire and Life Assurance Corporation v. Butler's Ice Cream Factory, supra, the provisions of the policy were substantially the same as the provisions of the policy in the present case. Mrs. Ruth Hays and others, referred to in the opinion as appellees, recovered judgment from the insured, referred to in the opinion as plaintiff appellee, and then sought to compel the insurance company to answer for the amount of the judgment. In that case the court, in argument, said:

"It seems to us, as said by Mr. Justice HOLMES in St. Louis Dressed Beef and Provision Co. v. Maryland Casualty Co., 201 U. S. 173, 26 S. Ct. 400, 50 L. Ed. 712, that the refusal of appellant to defend the suit of Mrs. Hays and other against plaintiff appellee cut at the very root of the mutual obligations in the policy contract, and put an end to appellee's right to demand compliance with the terms of the contract, on the other side. By appellant's refusal to defend it put the plaintiff appellee in its place with all its rights. . . . We think appellees were entitled to recover the full amount of the judgment

rendered against plaintiff appellee in the Hays and others suit, regardless of whether any amount of the judgment had been actually paid.''

In Matter of Empire State Surety Company, 214 N. Y. 553, where the provisions of the policies sued on were substantially the same as the provisions of the policy here in suit, the court said:

''Under these policies the Empire State Surety Company not only agreed to indemnify the assured against loss, but, in addition to this, it agreed at its own cost to defend any suit brought against the assured unless it should elect to settle the same or to pay the assured the indemnity provided for in the policy. The policy, therefore, not only afforded insurance against loss, but also carried with it the obligation of the company to defend suits brought against the assured. This latter obligation the company, under the terms of the policy, was required to perform during the life of the contract. Failure to defend suits brought against the assured constituted a breach of contract upon its part. [Brassil v. Maryland Casualty Company, 210 N. Y. 235; St. Louis Dressed Beef & P. Company v. Maryland Casualty Company, 201 U. S. 173.] Such a breach of contract on the part of the company released the assured from the agreement not to settle the claim without its consent, and was in effect a waiver of the condition of the policy that the company should only be liable after the assured had paid the judgment rendered against him. [St. Louis D. Beef & P. Company v. Md. Casualty Company, supra.] As was said by Judge WERNER in Brassil v. Maryland Casualty Company (supra): 'Its failure to continue the defense of these cases was in effect a breach of its contract.' In St. Louis D. Beef & P. Company v. Md. Casualty Company (supra) Mr. Justice HOLMES said: 'The defendant by its abdication put the plaintiff in its place with all its rights. To limit its liability as if its only promise was to pay a loss paid upon a judgment is to neglect the meaning and purpose of the reference to a judgment, and even the words of the promise. The promise in form is to indemnify against loss by certain kinds of liability. The judgment contemplated in the condition is a judgment in a suit defended by the defendant in case it elects not to settle.' (p. 182). The cases which have decided that where the company has not been guilty of a breach of contract it is liable only to pay the assured the loss which has been sustained as a result of a judgment recovered against him (Brewster v. Empire State Surety Company, 145 App. Div. 678; Saratoga Trap Rock Company v. Standard Accident Insurance Company, 143 App. Div. 852; McWilliams v. Home Insurance Company, 40 App. Div. 400) are without application when the company itself has been guilty of a breach of the contract or has failed to perform its conditions.''

The doctrine of these cases, and others like them which we have cited, have full application in the present case, for the appellant refused to defend the action brought by the plaintiff against the insured and disclaimed all liability under the policy regardless of whether the plaintiff's claim was paid by the insured or not. On what ground the appellant disclaimed liability does not appear. The judgment in the present case is well sustained on the doctrine of these cases, but we also think it may be sustained on the broader ground, that the policy in suit here is not a mere reimbursement contract, but is a liability contract.

Appellant insists that the policy, in consideration of the insuring clause alone, must be construed as a contract for reimbursement, and not as a contract to indemnify against liability, and says that the so-called no-action clause contained in the policy merely states the necessary legal effect of the insuring clause. Appellant argues that the language of the insuring clause, "to indemnify the insured against loss resulting from claims upon the insured for damages," means to indemnify the insured against claims for damages paid by him, and not to indemnify him against liability. We see no reason why the language should be so narrowly construed. It has not been the practice of the courts in this State to construe the language of insurance contracts so strictly against the insured. No person, unpracticed in refined discriminations, but seeking to purchase the protection of an insurance contract, would ever suppose that the language of this insuring clause, purporting to indemnify him against loss resulting from claims for damages, in fact indemnifies him against claim for damages only after he has himself first paid such claims in money. It is elementary and well understood that the financial worth of a person is the value of his property less what he owes, or, in other words, the value of his resources less his liabilities. A loss to a person as understood in business is either a decrease in the value of his resources or an increase in his liabilities. There ought to be no question that the word "loss" is used in this sense in the insuring clause of the policy under review. The loss within the meaning of the insuring clause occurs the instant that liability attaches, and against such a loss the insurer promises to indemnify the insured, and it can keep this promise only by discharging the insured's liability, or by providing the insured with the means to do so.

The no-action clause of the policy, so far as it is in conflict with the insuring clause, must yield to it. A definite promise made in the insuring clause cannot be defeated by denying to the insured in a subsequent clause, under the guise of a limitation, the right to bring an action for the enforcement of the promise. In so far as the no-action clause requires the insured's liability to be established by a trial of the issue in a suit against him, and in so far as it limits

the action that may be brought against the insurer to the insured alone lest the contract be construed as made for the benefit of the person to whom the insured may become liable, and thus allow such person to sue the insurer instead of the insured for such liability, the clause is in harmony with the insuring clause and serves a useful and legitimate purpose in the contract. But in so far as the no-action clause undertakes to limit the insurer's liability merely to an obligation to reimburse the insured for money paid by him in discharging his liability, it is out of harmony with the insuring clause. In this respect the no-action clause strikes at the very root and purpose of the contract as expressed in the insuring clause, converts the contract from a liability contract to a mere reimbursement contract, makes the insured's right of action against the insurer depend upon the mere formal and perfunctory act of first paying the liability adjudged against him, if he is solvent and able to do so, or, if he is insolvent and unable to do so, relieves the insurer of any liability whatever, and thus brings the insurance contract to naught, and enables the insurer to collect premiums without giving anything in return therefor. We are unwilling to give such an unreasonable construction to this contract. To do so would enable the insurer to place one construction on the contract for the purpose of selling the contract and collecting premiums, and another for the purpose of defeating recovery when disaster befalls.

Our construction of this policy is strengthened by the provisions thereof, whereby the insured is required immediately to notify the company of any claim or suit against him, and the company agrees to defend in the name and on behalf of the insured any suit brought against him, and reserves to itself the exclusive control of such defense, and excludes the insured from any interference therein. The law with respect to such provisions is stated in 36 Corpus Juris 1057, as follows:

"Where the policy provides that insured shall immediately notify the company in case of accident or injury, that the company would defend actions growing out of injuries, in the name of insured, and that insured should not settle any claim or incur any expense without the consent of the company, it is generally held to be a policy of indemnity against liability for damages, and is not merely a contract of indemnity against damages."

This statement of the law is quoted with approval in Griffin v. General Casualty & Surety Co., 231 Mich. 642.

In Wehrhahn v. Ft. Dearborn Casualty Underwriters (Mo. App.), 1 S. W. (2d Series) 242, this court held that a policy, containing provisions similar to the provisions of the policy in the present case, except for the absence of the no-action clause, was a contract against liability, and not a mere contract to reimburse the insured for money paid in discharge of liability.

Counsel on both sides of this case have expended much effort and learning relative to the meaning of the word "action," as used in the no-action clause. The appellant's counsel contend that the word includes a garnishment proceeding, and the insured's counsel contend that a garnishment proceeding is not an action, and is not included within the meaning of that word, as used in the no-action clause. These contentions are necessarily futile, for, if the no-action clause undertakes to prohibit the person to whom the insured may become liable from enforcing satisfaction of a judgment obtained on such liability by process of garnishment against the insurer, it is so far void as an attempt at legislation. The insurer cannot by its contract with the insured make laws or repeal statutes.

Appellant cites and relies on Staggs v. Gotham Mining and Milling Co. (Mo. App.), 235 S. W. 511, in support of its position. That case is not regarded as authority in the present case. The insuring clause of the policy under review in that case is not set out *in haec verba* or in substance. Nor does it appear that the policy contained a clause whereby the insurer agreed to defend any action brought against the insured, nor, if there was such a clause in the policy, that the insurer violated the clause by refusing to defend the suit against the insured, so as to bring the case within the doctrine announced in General Accident Fire and Life Assurance Corporation v. Butler's Ice Cream Factory, and Matter of Empire State Surety Company, supra.

The views herein expressed are not out of accord with State ex rel. Western Automobile Insurance Company v. Trimble, 297 Mo. 659, 249 S. W. 902. The insurance contract under review in that case is very different from the contract in the present case. In that case the insuring clause promises that the insured "will be indemnified for any sums paid" by the insured in satisfaction of any judgment imposed by law upon the insured. Nor does it appear that the contract required the insurer to defend any suit which might be brought against the insured. In some of its other features, too, the contract is different from the contract in suit here.

It follows under the conceded facts in the present case that when the plaintiff commenced his garnishment proceedings, the garnishee was indebted to the insured under its policy, and that the judgment rendered by the court below in favor of the plaintiff against the garnishee is right, and should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.