SCHAMBS v. FIDELITY & CASUALTY CO. OF NEW YORK (two cases).

(Circuit Court of Appeals, Sixth Circuit. April 8, 1919.)

Nos. 3232, 3236.

1. COURTS ⬥342—FEDERAL COURTS—EQUITY JURISDICTION—WAIVER.

Where a surgeon became bankrupt when a judgment for malpractice was rendered against him, an action by the trustee in bankruptcy against a so-called liability insurer, which agreed to indemnify the surgeon for liability for malpractice, etc., must be considered to be one at law, though the parties proceeded on the assumption that it was one in equity, so an appeal from the judgment for insurer must be dismissed.

2. INSURANCE ⬥146(3)—LIABILITY INSURANCE—POLICY.

A policy of insurance should be construed favorably to the insured, and against the insurer, if the language leaves the matter in doubt.

3. INSURANCE ⬥514 — LIABILITY INSURANCE — POLICY—CONSTRUCTION — "LOSS."

Where a policy insuring a surgeon against loss from liability for malpractice, and requiring the insurer to defend, etc., did not use language specifically showing that no action could be maintained thereon until the insured had suffered and paid a judgment, held, that the indemnity was not limited merely to sums paid by the surgeon; so, where the surgeon became a voluntary bankrupt after rendition of judgment for malpractice, such judgment constituted a loss within the terms of the policy, and the trustee in bankruptcy might sue for benefit of judgment creditor, who was the sole creditor scheduled.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Loss.]

Appeal from and in Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Wallace L. Schambs, trustee in bankruptcy of H. D. Fowler, against the Fidelity & Casualty Company of New York. There was a judgment for defendant, and plaintiff appeals and brings error. Appeal dismissed; judgment reversed, and cause remanded for new trial, on writ of error.

The bankrupt, Fowler, was a surgeon. He carried with the appellee (hereinafter called the company) a policy of so-called liability insurance, limited to $5,000. An action for malpractice was brought against him by one Rainsford. The company assumed the defense of the suit. Rainsford obtained judgment for $10,000. The company, with the consent of the assured, decided

not to prosecute any proceeding for review. Thereupon Dr. Fowler filed a voluntary petition and was adjudged a bankrupt. He scheduled this judgment as his only debt, and showed assets of some $400. The trustee in bankruptcy, after providing for expenses, paid a 2 per cent. dividend upon this claim—the only one proved—and thereupon brought this action in the court below to recover from the company the $5,000 named in the policy. The company claimed it was liable only for what Dr. Fowler or his trustee had paid to Rainsford, viz. $200. The trial court took this view, and from a judgment accordingly the trustee prosecutes both error and appeal.

That portion of the policy which directly imposes liability reads as follows: "[The Company] does hereby agree: (1) To indemnify the * * * assured against loss from liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake of the assured. * * * (2) To defend, in the name and on behalf of 'the assured, any suit brought against the assured, etc."

Later clauses specifically provided (7) that the company would continue the defense of any such suit "until a final decision is rendered in the assured's favor, or until the case has been appealed to the highest court to which an appeal can be taken, or until the suit has been settled with the written consent of the assured," and (9) that the assured should not "voluntarily assume any liability nor incur any expense, * * * nor, except at his own cost, settle any claim, nor * * * interfere in any negotiations or legal proceedings conducted by the company on account of any claim."

Louis H. Winch, of Cleveland, Ohio, for appellant and plaintiff in error.

H. M. Roberts, of Cleveland, Ohio, for appellee and defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The petition by which the action was begun did not undertake to classify itself as a declaration at law or a bill in equity. It was docketed as if in equity, but asked no specific relief of any kind, excepting a money judgment. The answer did not deny jurisdiction in equity. The case was submitted to the District Judge upon an agreed statement of facts. We fail to see any color of right to proceed in equity, which would be sufficient to support equity jurisdiction, even in the presence of as much of a waiver as the parties can make (Toledo Co. v. Computing Co. [C. C. A. 6] 142 Fed. 919, 923, 74 C. C. A. 89), and we think the action must be considered to be at law. It follows that the appeal, No. 3232, must be dismissed, and the merits of the case will be considered under the error proceedings, No. 3236.

[2, 3] Upon the merits, the controlling question is this: Did the company indemnify against any part of the Rainsford judgment which Dr. Fowler or his estate had not paid? The question, in somewhat analogous cases, has been considered to be whether the indemnity was against liability or was only against ultimate loss, and there is supposed to be a sharp conflict of authority between the cases which classify such policies in one or the other category, although, when we come to consider the peculiar language of this policy, we do not find any embarrassing conflict.

In policies of this nature, the distinction was early recognized between insurance against liability and indemnity against damages. Gilbert v. Wiman, 1 N. Y. 550, 49 Am. Dec. 359. In view of this distinction, it became common to insert in such policies the provision known as the "no action" clause, which provided that (e. g.):

"No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue."

Under such "no action" policy, it was held, in Massachusetts, that the plain and express language of the policy must be given effect, and that the duty to indemnify did not arise until the judgment was paid. Connolly v. Bolster, 187 Mass. 266, 72 N. E. 981. The result in this Massachusetts case has been quite generally adopted in cases involving "no action" policies; and the presence of this clause has usually been given the controlling force which it seems to merit.[1] On the other hand, it was held in New Hampshire that such a policy would be construed as indemnifying against liability as soon as the liability was fixed by judgment. Sanders v. Frankfort Co., 72 N. H. 485, 57 Atl. 655, 101 Am. St. Rep. 688. This opinion has been followed in only one case involving the same kind of policy.[2]

The common intent of the parties must control, and there is, to say the least, serious difficulty in thinking that the parties intended that the duty to indemnify should arise before payment of the judgment, when they have, in express words, said that it shall not arise until after that event. However, this case does not require us to choose as between these conflicting views. This policy was drawn by the insurer; the company was presumably familiar with the common use and with the adjudged effect of this "no action" clause; and it omitted that clause from this policy. It chose rather to rely upon language which lacks that certainty and freedom from ambiguity which might have been had, and the language which it selected must be construed according to the usual rules for ascertaining its true intent.

The plaintiff contends that clause 2 and the later clauses, the substance of which has been stated, are inconsistent with clause 1, and so neutralize what might otherwise be thought the plain limitation of clause 1. We cannot find any substantial inconsistency. The phrase "loss from liability" necessarily contemplates the existence of two things: The precedent liability and the resulting loss. There can be

[1] Frye v. Bath Co., 97 Me. 241, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500; Carter v. Ætna Co., 76 Kan. 275, 91 Pac. 178, 11 L. R. A. (N. S.) 1155; Cushman v. Fuel Co., 122 Iowa, 656, 98 N. W. 509; Finley v. Casualty Co., 113 Tenn. 592, 602, 83 S. W. 2, 3 Ann. Cas. 962; Fidelity Co. v. Martin, 163 Ky. 12, 173 S. W. 307, L. R. A. 1917F, 924; Stenbom v. Brown Co., 137 Wis. 564, 119 N. W. 308, 20 L. R. A. (N. S.) 956; Allen v. Ætna Co. (C. C. A. 3), 145 Fed. 881, 76 C. C. A. 265, 7 L. R. A. (N. S.) 958.

[2] Patterson v. Adan, 119 Minn. 308, 315, 138 N. W. 281, 48 L. R. A. (N. S.) 184. The New Hampshire case is fully approved in the dissenting opinion in Fidelity Co. v. Martin, 163 Ky. 12, at page 31, 173 S. W. 307, L. R. A. 1917F, 924, and its principle seems to have ruled Davies v. Maryland Co., 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D, 395, 398.

no loss unless there is a liability. We may for the moment allow defendant its interpretation of the word "loss," and concede that it means only payment or collection, and still it would be entirely natural that the company should have the right to intervene and take entire control of the proceedings which fix liability, and have the right to defeat that liability if it could—even against the will of the assured. It would thereby only be protecting itself against that ultimate "loss" which it had insured. Nor can we think that the word "defend," in clause 2, rightly means "successfully defend." True, the covenant is to defend the suit, and judgment and execution are parts of a suit; but to say that an agreement to defend a suit carries a liability to pay the judgment that may be recovered would be an extension of the ordinary meaning of the word. If the plaintiff were at liberty to consider and rely upon clause 7 in this connection, it might argue that the meaning of the covenant to defend would be broader, and might be sufficient for its theory, because clause 7 agrees to continue the defense at least further than it was carried in this case; but Dr. Fowler expressly released the company from the performance of this clause. In so far as he represents Dr. Fowler, the trustee cannot deny the effect of this release; and since the failure to continue the defense further could not have prejudiced Rainsford, who was the only creditor, the trustee, as representing creditors, is equally without standing to complain.

However, the fact that the later clauses are not inconsistent with a limitation of the company's ultimate liability to that which is measured by the money paid by, or taken from, the assured, does not prevent these later clauses from serving to interpret clause 1. "Loss" is not a word of limited, hard and fast meaning. There are many kinds of loss, besides money out of pocket. No man would doubt that he might rightly call a "loss" that event which changed his status from solvency to insolvency, and compelled him either to go through bankruptcy or else be unable to own any property as long as he lived. Indeed, in the strictest sense of the word, the business man against whom a judgment of this kind became final during a fiscal year, so that at the end of that period he must carry it on his books as a liability, would, according to all familiar systems of bookkeeping, enter it as a loss for that period, and treat it accordingly; and he would seem to have a right to deduct it from his gross income under the permission of the income tax law to deduct "losses." It is clear to us that, as this word is used in clause 1, it is ambiguous, and may have attributed to it either of the meanings claimed by the respective parties here, according as the whole contract and the conceded circumstances may dictate.[3]

It is the familiar rule that ambiguities in such contracts are solved against the interest of the insurer. "A policy of insurance, prepared with much care for the interests of the insurer, should be construed favorably to the other party if the language employed leaves the matter in doubt." Casualty Co. v. Cumberland Co. (C. C. A. 6) 152 Fed. 961,

---

[3] "In the parlance of the business of insurance * * * the liability is called a loss." State v. Railway Co., 68 Ohio St. 9, 30, 67 N. E. 93, 96 (64 L. R. A. 405, 96 Am. St. Rep. 635).

963, 82 C. C. A. 315, 12 L. R. A. (N. S.) 478. This thought has special force in a case where, as here, the insurer, in drafting the contract, discarded a form of contract which was in common use and which would have made the intent entirely clear according to its present claim, and used instead language which is capable of the construction claimed by plaintiff.

The inference which would naturally be drawn by the ordinary man is important to observe, in interpreting such a contract. The assured, in this class of contract, unless the contrary is clearly brought to his attention, must suppose that he is getting protection against the results of an adverse judgment. That he should carry what is called indemnity on account of damage suits, and find it of no help unless he first raised the money to pay the judgment, perhaps by stripping himself of all his property and at a sacrifice, would surely be a surprise to the ordinary policy holder; nor is it reasonable to suppose, unless it is made very plain, that he would deliberately take such a contract.

The solvency of all parties is the normal thing with reference to which contracts are made, and in interpreting the language used, we must suppose the assured was expected to discharge the obligations which the law might impose. If it is intended to provide for the abnormal situation where the assured refuses to perform his legal duty and because of insolvency the law cannot compel performance, language should be used which clearly reaches the unusual condition.

The peculiar results which would flow from adopting the company's construction may be considered. If the insured, against whom a personal injury judgment is rendered, has no property, he may decline to pay anything, thereby making the company's liability depend upon the assured's future acquisition of property so that something may be collected, or he may borrow from friends as much as he can, perhaps giving the insurance policy as security, and then whatever he pays on the judgment becomes a claim under the policy. If the judgment against the assured is $5,000, but only $3,000 can be and is collected from him on the judgment, he may collect from the insurance company $3,000, whereupon he will have further assets from which the balance of the judgment may be made; but he would apparently have no further recourse against the company, since the policy gives only one cause of action. Several such complications suggest themselves; and it is not likely that the parties intended to make a contract where liability would be dependent upon the whim of one party, or where it only partly covered the damage the whole of which it purported to reach. "A contract ought not to be construed to an absurd conclusion, if a reasonable one is possible." Casualty Co. v. Cumberland Co., supra, 152 Fed. at page 963, 82 C. C. A. at page 317, 12 L. R. A. (N. S.) 478.

Special difficulties to which the company's theory leads, in case of the insured's bankruptcy, are entitled to notice. Where, as here, there is only one creditor, the measure of damage is troublesome enough; but in the ordinary case there seems no satisfactory way of computation. Some of the difficulties were stated by the present Mr. Justice Pitney in Beacon Co. v. Travelers' Co., 61 N. J. Eq. 59, 64, 47 Atl. 579,

and though the appellate court in that case (Travelers' Co. v. Moses, 63 N. J. Eq. 260, 49 Atl. 720, 92 Am. St. Rep. 663) undertakes to formulate a measure of damages, we are unable to apply that formula satisfactorily to the facts of this case, and it impresses us as somewhat arbitrary. The presumptions are against any intent by the parties to make a contract leading into such by-ways.

Evidently, their minds were largely centered upon the judgment which should fix the assured's liability, a considerable part of the contract is devoted to that subject and to disposing of the attendant conditions, and this distinctly tends to show what sort of a "loss" was in contemplation. When we give due weight to these portions of the contract and to each of the considerations which we have mentioned as bearing on the construction of the whole, we are satisfied that when the parties, in clause 1, referred to a "loss from liability," they intended that kind of a loss which, in ordinary nomenclature and thought, comes into existence when the liability of the assured becomes irretrievably fixed.

A careful review of all the cases cited from the various courts discloses not one, where the policy has indemnified against "loss from liability," has contained the obligation to assume and conduct the defense to a final judgment, and has not contained a "no action" clause, and yet where the company's liability has been limited to the assured's money out of pocket.[4] On the contrary, our conclusion as to the true meaning of such a policy finds direct support in Maryland Co. v. Peppard, 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E, 597, and Blanton v. Kansas City Co., 103 Kan. 118, 172 Pac. 987, L. R. A. 1918E, 541. The numerous other cases cited as upholding the insurer's liability are all instances of clear and unquestionable indemnity against liability, rather than against loss.[5]

In No. 3236, the order will be that the judgment below be reversed, and the case remanded for a new trial in accordance with this opinion; in No. 3232, the appeal is dismissed.

[4] Lowe v. Fidelity Co., 170 N. C. 445, 87 S. E. 250, may be such a case, though the presence of the covenants to defend does not appear; and see Atlas Co. v. Georgia Co., 129 Tenn. 477, 483, 167 S. W. 109, so holding, but plainly obiter.

[5] American Co. v. Fordyce, 62 Ark. 562, 568, 36 S. W. 1051, 54 Am. St. Rep. 305; Fidelity Co. v. Fordyce, 64 Ark. 174, 41 S. W. 420; Fenton v. Fidelity Co., 36 Or. 283, 56 Pac. 1096, 48 L. R. A. 770; Lewinthan v. Travellers, 61 Misc. Rep. 621, 113 N. Y. Supp. 1031; Anoka Co. v. Fidelity Co., 63 Minn. 286, 292, 65 N. W. 353, 30 L. R. A. 689; Hoven v. Employers' Co., 93 Wis. 201, 207, 87 N. W. 46, 32 L. R. A. 388; Sheehan v. Farwell, 135 Mich. 196, 97 N. W. 728; Ross v. American Co., 56 N. J. Eq. 41, 38 Atl. 22; Fritchie v. Millers' Co., 197 Pa. St. 401, 47 Atl. 351; Pickett v. Fidelity Co., 60 S. C. 477, 38 S. E. 160, 629.