## MICHEL v. AMERICAN FIRE & CASUALTY CO.

### ENGLISH et al. v. SAME.
### No. 7970.

Circuit Court of Appeals, Fifth Circuit.
March 18, 1936.

584

E. Dixie Beggs, Jr., of Pensacola, Fla., and Joseph G. Dempsey, of New Orleans, La., for appellants.

John M. Coe, of Pensacola, Fla., and Chas. A. Morehead, of Miami, Fla., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

On two garnishments issued upon two judgments in the District Court, the garnishee, American Fire & Casualty Company, answered that it was not indebted to the defendant G. C. Wesley; and the plaintiffs, M. E. Alma Michel and Hazel Claire English, traversed the answers. On trial of the general issues thus made, the judge directed the jury to find for the garnishee. From the resulting judgments plaintiffs prosecute these appeals. The proof made before the jury showed verdicts for the plaintiffs against Wesley on November 23, 1933; that the verdicts were on December 7th ordered set aside unless before the first Monday in January remittiturs should be filed reducing them to stated amounts; and that on December 29th the remittiturs were duly entered and judgments taken for the reduced amounts. The garnishments were issued April 16, 1934. A policy of insurance concededly binding on the garnishee was introduced, wherein the insurers undertook to indemnify Wesley against the results of injuries to the persons or property of others occasioned by the use of his automobiles during a period within which the plaintiffs received injuries for which their judgments were rendered. On the part of the garnishee it was proved that on December 8, 1933, the day after the remittiturs were ordered, the garnishee paid Wesley $1,000 in cash and took from him a release under seal whereby Wesley released it "from any and all obligations, indemnities, warranties, agreements or covenants under that certain policy of insurance numbered 54,114, and from any and all liability, protection or indemnity under the same." The manager of garnishee's claim department testified that he negotiated with Wesley for the release, that the impending liability upon the policy was $6,200, and that there was an oral agreement that the company would in addition to paying the $1,000 cash

for the release continue to defend the suits of plaintiffs as it had been doing, and that it did carry them on through the Court of Appeals and pay the counsel fees and the costs of appeal. In answer to the question whether this settlement was not an effort to defeat liability to the plaintiffs, he said: "Of course it was a protection to the Company. It was agreeable with Mr. Wesley. The purpose of it was to prevent our liability to the full amount of the judgments." The policy was surrendered on the execution of the release. The affidavits for garnishment state that Wesley did not have visible property out of which to make the judgments. There was no other evidence of insolvency except the fact that the judgments were not paid. The contentions of appellants are: (1) That there was a direct liability to them under the policy which Wesley's release could not extinguish; (2) that there was at least a liability to Wesley which was an asset that could not- be disposed of in fraud of his creditors; and (3) that a jury could have found that the release was in fraud of these appellants.

1. The policy was taken out and paid for by Wesley.* It provides for his indemnification on account of claims against him made by those whose persons or property his automobiles might injure, and for relieving him of the burden of defending suits about such things. There is no provision that any injured person is to be indemnified. The policy was not taken out pursuant to any statute requiring protection for the public. Of course, a third person, a stranger both to the contract and the consideration, may enforce a promise made for the purpose of benefiting him, according to the overwhelming weight of American authority. Hendrick v. Lindsay, 93 U.S. 143, 23 L.Ed. 855; Carson, Pirie, Scott & Co. v. Parrett, 346 Ill. 252, 178 N.E. 498, 81 A.L.R. 1262 and note. Such is the law in Florida. Wright v. Terry, 23 Fla. 160, 2 So. 6; Enns-Halbe Co. v. Templeton, 101 Fla. 609, 135 So. 135. Familiar instances are that members of a class intended to be the beneficiaries of the contract although not named may enforce insurance taken out for their protection, as also materialmen and laborers may enforce contractor's bonds conditioned to pay them. In Ohio Casualty Ins. Co. v. Beckwith, 74 F.(2d) 75, we held that a policy of insurance much like this might be sued upon by a person injured. But it was because the policy included provisions that the insurer would, besides defending the claim, pay all costs and expenses and interest after judgment until he should pay into court on the judgment its amount not in excess of the policy limit. We thought those provisions amounted to a promise to pay the judgment within the limit of the policy, and that it was a promise for the benefit of the injured person which after obtaining judgment he could enforce. Nothing of the sort appears in this policy. While there is no express prohibition against a third person suing on the policy,** there is nothing that would confer the right. Indemnity is promised to the assured alone. The contract is a selfish one for his own protection. Notwithstanding the insurer defended the suits of these plaintiffs

---

*The policy contains these pertinent provisions: "American Automobile Insurance Underwriters in consideration of premium payments called for * * * do hereby severally agree to indemnify the assured named herein—Liability Coverage $10,000 limit, Property Damage Coverage $5,000 limit—against loss resulting directly from the ownership, maintenance or specified use of any automobile described herein on account of damages imposed by law upon the assured * * *." "In addition to the above the underwriters agree to defend in the name and on behalf of the assured any suit against the assured to enforce claim, whether groundless or not, brought against assured to recover damages on account of such accident." "No suit or action at law or in equity shall be prosecuted or maintained on this contract against the underwriters for the recovery of any claim unless the assured shall have first made full and complete compliance with all the terms and conditions and provisions of the policy and application agreement, nor unless brought within twelve months after such loss or damage occurred or, in case of liability and property damage, unless brought within twelve months after final judgment, if secured against the herein named assured." "The indemnity provided hereunder shall apply only to such liability as may be imposed in civil actions." "The risks covered by this policy and the premiums payable for its full term are as follows: Public Liability and Property Damage, $18.-50." There are also provisions that the assured will immediately notify the insurer of injury to persons or damage to property, and will not settle or acknowledge liability without the consent of the insurer.

**Often contained in the "no action" clause.

according to its contract, it did not thereby render itself directly liable to them to pay the judgments.

2. But we do not think the assured, Wesley, must have paid the judgments obtained against him before he could call upon the insurer for the indemnity promised. Such insurance is often taken by persons of small means to provide from a solvent source funds to protect them against disaster. The insured may have only a home or a small business. Must he suffer the one to be sold out by the sheriff or sacrifice the other before he can call on his insurer for help? When, as here, the insurer has full charge of defending the liability, it is more reasonable to suppose that the indemnity intended was to be afforded by furnishing the money to discharge the liability when finally established. Whether such an indemnity has been promised must be determined from the language of the contract in the light of the objects sought by the parties. As pointed out in the case of Beckwith, supra, and clearly stated and fully illustrated in cases cited in 31 C.J., Indemnity, §§ 33, 34, 35, and 36 C.J., Liability Insurance, §§ 1, 2, 74, 75, 76, there is a clear distinction between contracts to indemnify against liability incurred and those to indemnify against loss, the term "loss" generally referring to an actual payment by the indemnitee. If the indemnity promised is against liability, the incurring of the liability, or, if disputed, the rendition of a judgment upon it, will entitle the indemnitee to enforce his indemnity. But if the indemnity is against losses paid, payment of course must have happened before the indemnity contract can be enforced. If this policy be of the latter class, since Wesley paid nothing on the judgment, neither he nor anyone in his right, could have enforced it when these garnishments issued. Allen v. Ætna Ins. Co. (C.C.A.) 145 F. 881, 7 L.R.A. (N.S.) 958; United States F. & G. Co. v. Williams, 148 Md. 289, 129 A. 660; Combs v. Hunt, 140 Va. 627, 125 S.E. 661, 37 A.L.R. 621. If this policy had used only the words "indemnify against loss," such might be its proper construction. But in the insurance world the term "loss" is very commonly used to express an ascertained liability of the insurer. When insurers pay such liabilities, they speak of it as a payment of their losses. Business men also speak of their losses irrespective of whether the liabilities which cause them have been paid. So do gamblers. Taking all the expressions of the policy together, we are of opinion that Wesley was insured against ascertained liabilities incurred to a limit of $10,000 on account of the claims mentioned in the policy, irrespective of whether he may have paid them or not. The policy reads (italics added): "Agree to indemnify—*Liability* coverage $10,000—against loss on account of *damages imposed by law* upon the assured." Nothing is said about the payment of damages, but the loss is on account of the imposition of them by law, which happens when a judgment is rendered. Suits on the policy are to be barred "in case of *liability* and property damage, unless brought *within twelve months after final judgment*" against assured. If the indemnity is only against payment no demand could be made under the policy at final judgment against the assured, and of course no suit could be instituted. Wesley might be unable to pay the judgment or might contest a levy for twelve months, but his insurance would become barred because he had not sued upon it, although on no day of the period did he have a right of action. More reasonably the meaning is that upon establishment of Wesley's liability by a final judgment the duty of the insurer to pay arises, and the contractual bar is imposed after twelve months' failure to enforce the payment. Again the provision, "The *indemnity* provided hereunder shall apply only to such *liability* as may be *imposed in civil actions*," fairly states that the indemnity is not against payment but against the imposition of *liability by judgment* in a civil action. And lastly the enumeration of the risks taken and the premium therefor is worded: "The *risks covered* by this policy and the premiums payable for its full term are as follows, *Public Liability* * * * $18.50." Liability is thus repeatedly mentioned, and imposition of damages in civil actions and final judgment against assured, but payment by him is not. Looking to the object that the parties likely had in view and the means of attaining it (which included the insurer's taking charge of all litigation) and to all the provisions of the policy, we think the reasonable construction is that the insurer, after losing a case against assured so that judgment was had against him, is bound to indemnify him against the liability thus established by furnishing him with money within the policy limit to pay the judgment. If there be doubt about it, the doubt goes not in favor of an illusory indemnity but of the more real and serviceable one, seeing that the insurer proposed the policy and

chose its terms. American Surety Co. v. Pauly, 170 U.S. 133, 144, 18 S.Ct. 552, 42 L.Ed. 977; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L. Ed. 895; Elliott v. Belt Automobile Association, 87 Fla. 545, 100 So. 797. The expression indemnify "against loss from the liability imposed by law * * * for damages" was held to mean insurance against liability, and not against loss by payment thereof, in Slavens v. Standard Accident Co. (C.C.A.) 27 F.(2d) 859. The meaning of the word "loss" in a policy thus worded was well discussed in Schambs v. Fidelity & Casualty Co. (C.C.A.) 259 F. 55, 6 A.L.R. 1231, with the same result. Stress was there laid on the absence from the policy of the "no action clause" which provides in substance that no action shall be brought save by the assured himself to reimburse him for loss actually sustained and paid, and which is commonly put in policies when payment rather than liability is insured against. That clause is not in the policy before us. The presence or absence of it is much stressed also in the state court cases. A full review of scores of recent ones as they bear upon the question whether the indemnity promised is against incurring liability or against having to pay will be found in the note to Brandon v. St. Paul Mercury Indemnity Co., 83 A.L.R. 677. The great weight of authority is that in the absence of a "no action clause" or its equivalent, if the words at all permit of it, the intent will be held to be to insure against liability. While in a somewhat different field of insurance this construction is strongly supported by the decision in Allemania Fire Ins. Co. v. Firemen's Ins. Co., 209 U.S. 326, 28 S.Ct. 544, 52 L.Ed. 815, 14 Ann.Cas. 948. From the report of that case in the lower court, 28 App.D.C. 330, 14 L.R.A.(N.S.) 1049, it appears that a policy of reinsurance contained the words "*Losses,* if any, shall be payable pro rata with, in the same manner, and upon the same terms and conditions *as paid* by the said reinsured company under its contracts, hereunder reinsured, and in no event shall this company be liable for an amount in excess of a ratable proportion of the sum *actually paid* * * * by the said reinsured company." Notwithstanding the words "losses" and "actually paid," on looking to the purposes of the reinsurance both courts held that it would be enforced although the reinsured company had not paid its policy liabilities and was insolvent. We hold that Wesley was entitled to be indemnified against plaintiffs' judgments without his paying them, and the indebtedness so due to him could be garnished by his judgment creditors just as any other debt could be. Employers' Liability Corporation v. Bodron (C.C.A.) 65 F.(2d) 539; Brandon v. St. Paul Mercury Indemnity Co., 132 Kan. 68, 294 P. 881, 83 A.L.R. 673.

▮▮▮ 3. This liability being to Wesley alone, he of course before any garnishment or other proceeding occurred to prevent could collect it or in good faith compromise it, the judgments not being a lien on such a chose. Hollings v. Brown, 202 Ala. 504, 80 So. 792; Combs v. Hunt, 140 Va. 627, 125 S.E. 661, 37 A.L.R. 621; 36 C.J., Liability Insurance, § 129. But the matured insurance was an asset of Wesley. A release of it is equivalent to a conveyance of it, which is void if in fraud of creditors. It is certainly a contract. The Statute of Elizabeth touching acts void as to creditors as re-enacted in Florida contains these words: "Every * * * contract * * * which shall at any time hereafter be had, made or executed of fraud, covin or collusion * * * to the end, purpose or intent to delay, hinder or defraud creditors * * * of their just and lawful * * * damages * * * shall be from henceforth as against the person or persons so intended to be delayed, hindered or defrauded deemed * * * utterly void, frustrate and of none effect," saving such as are made bona fide and on good consideration with persons who have no notice or knowledge of the fraud or collusion. Comp.Gen.Laws 1927, § 5771. Wesley had a solvent claim of $6,200 against the insurer, which could be applied to the claims against him. He took $1,000 in cash and put it in his pocket where his creditors could not get it, releasing the remaining $5,200 to the insurer. Verdicts had just been rendered against him. Though the release was absolute and of the entire policy, which was surrendered, a secret benefit was retained in that the insurer was to continue to defend him against the verdicts. Insolvency is not mentioned in the act, but under the evidence Wesley is apparently judgment proof. There are thus several of the so-called "badges of fraud" in the transaction. The insurer must have understood as the reason why Wesley would take $1,000 in cash for an asset probably worth $6,200 that he intended to secrete the cash from these creditors and not pay them.

The matter is really not left to inference, because the agent of the insurer testifies that the purpose was to prevent liability to the full amount on the judgments. The circumstances were sufficient to make a question for the jury whether there was a collusive effort to defeat these creditors rather than a bona fide compromise of the insurance claim. The direction of a verdict in favor of the garnishee was erroneous.

The judgments are reversed, and the causes remanded to the District Court for further proceedings not inconsistent with this opinion.