32455.   STANDARD  ACCIDENT  INSURANCE  COMPANY
*v.* FOWLER *et al.*

Decided December 3, 1949.

504

508

509

*James A. Branch, Thomas B. Branch Jr.*, for plaintiff.

*Andrews & Nall, W. George Thomas, Mose S. Hayes,* for defendants.

MacIntyre, P. J. (After stating the foregoing facts.) All the motions raise the single question: Was the evidence sufficient to authorize the jury to find that the policy of insurance in question had not been canceled at the time of the accident involved in the case?

It seems to us that the jury were authorized to find from the evidence that A. C. Latimer was merely a claims adjuster of the insurance company, and not an agent to receive applications for policies of insurance or to receive premiums, or to write policies of insurance or to cancel them; that he was, under the facts of this case, merely an intermediary or conduit chosen by Fowler, the beneficiary under the insurance policy, and the insurance company, through whom the negotiations culminating in the writing of the policy in question would be carried on; that after the policy was issued to Fowler he sought a few days thereafter to make Latimer an intermediary or conduit through which the negotiations for the cancellation of the policy would flow, but that Latimer never conveyed the proposal of Fowler to have the policy canceled by mutual consent to the duly authorized agent of the company until after the accident which resulted in several claims for damages against the alleged insured, Fowler, and had not communicated this proposal from Fowler until after August 6, 1946, prior to which date the premiums had been demanded, were paid and accepted by the company. The jury were authorized to find further that the policy of insurance in question was issued on July 8, 1946, and that a few days thereafter Fowler made a proposal through the intermediary, A. C. Latimer, that the policy be canceled, as he thought he could obtain another policy which would be cheaper; and that the proposal seeking to cancel the policy by mutual consent, if the insurance company would not hold him liable for premiums, was not transmitted to an agent of the company authorized to relieve the beneficiary from the payment of premiums and to accept such proposal of its cancellation by mutual consent. Larry Brown, the agent of the insurance company who had written the policy, testified on this subject that when Latimer came back from his vacation in Florida he went to Latimer and told him that Fowler would not come by and pick up the policy and pay the premiums, and that Latimer told him to go ahead and cancel the policy, and Brown did not know at the time of the circumstances of the conversation of Latimer and Fowler relating to the question of mutual cancellation of the policy, thus, in effect, saying that Latimer, the intermediary did not convey to Brown, the agent of the company, the proposal of Fowler to cancel the policy by mutual

consent until after the demand for payment in the form of the bill had been received by Fowler and after the accident had occurred and after the premium had been paid in response to demand, although the accident had occurred between the time the bill was dated and the time the premium was paid in response to such demand of the company in such bill. We do not think that the evidence that Latimer told Fowler that the agent of the company could hold him for the premiums, but they would not do so, nevertheless "That was a hell of a way to do business," but that the policy was canceled, and that on the first of the month next thereafter the agent Brown sent a bill to Fowler demanding the payment of the premium (it not appearing that Latimer had any authority to bind the company in relieving Fowler of the payment of the premiums or in canceling the policy) would require the jury to infer that the insurance company was to be discharged from its obligation while Fowler remained liable for the premiums. *Home Ins. Co.* v. *Chattahoochee Lumber Co.*, 126 *Ga.* 334 (55 S. E. 11). The jury were authorized to find that the policy was not canceled by reason of the mutual consent of both parties. The fact of additional evidence that Latimer, the intermediary, who had no authority to cancel the policy for the insurance company, told Fowler a few days after the policy had been issued (about July 11th) that the policy was canceled and that Fowler thought that the policy was in fact canceled would not change the situation, for the duly authorized agent of the company who had written the policy demanded payment thereafter by sending a bill to Fowler dated on the first of the following month, August 1, 1946, in response to which Fowler paid the amount of the bill on August 6, 1946, to the agent who had written the policy.

As to the payment of premiums, the jury were authorized to find that the company had sent a bill dated August 1, 1946, to Fowler after he had sought to have the policy canceled by mutual consent and be relieved of the payment of the premiums. On August 6, Fowler communicated with Brown to know if the policy had been canceled, whereupon Brown asked him if he wished to cancel it, and Fowler told him "Not if it had not been canceled." Brown told him that it had not been canceled and Fowler said he would be around and pick it up. Thereafter

512

Fowler on the same day went around and paid Brown the premium of $25, and Brown thereupon delivered him the policy. Brown testified that he had authority to cancel policies for the company, and that when he entered cancellations he sent them to the home office and it had never refused to cancel a policy when he had stamped it for cancellation. He testified that he had marked the policy for cancellation on August 6th, about two hours previous to that conversation with Fowler on the same day, and that he had later with ink eradicator erased such stamping. However, Fowler testified that when he paid down the $25 premium Brown took the policy out of the pigeonhole and delivered it to him, and that there was nothing on the policy to show a cancellation. Of course, the jury could have accepted Fowler's version of this happening. Thus we think that the jury were authorized to find on this feature of the case that the policy had not been canceled for non-payment of the premiums. The jury were authorized to find on the whole evidence that the policy had not been canceled and was of force and effect on August 4, 1946, at the time of the accident in question.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*