## LOUDERMILK et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.

### No. 14034.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1952.

G. Seals Aiken, Atlanta, Ga., Thos. J. Brown, Jr., McDonough, Ga., for appellants.

T. Reese Watkins and John B. Harris, Jr., Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Brought against Opal Tingle, the named insured in an automobile policy, No. VF 1, 001, 176, plaintiff had issued, and Horace Tingle, the driver of the car, and against Mrs. Loudermilk and Mrs. Brooks, who had sued the Tingles for collision damages, the suit was for a declaration of its rights and obligations with respect to the policy.

The claim in general [1] was that the col-

1. This is how plaintiff pleads the matter in detail in paragraphs 9 and 10 of its complaint:

"9. Complainant shows the court that the defendants in the above described petitions delivered to it the copies of said petitions under the following circumstances, to-wit—

"The accident which is the basis of said petitions is alleged to have occurred at or about 6:30 o'clock, P. M., on the 16th day of July, 1950.

"Prior to said date complainant had issued and through its agent had delivered to the defendant, Miss Opal Tingle, a policy of liability insurance under its Number VF 522,840, by the terms of which it undertook and bound itself to protect the said Miss Opal Tingle from damages which she might be legally obligated to pay because of occurrences

such as are described in said petitions. Complainant by the terms of its policy also undertook the same obligation for anyone who drove Miss Opal Tingle's automobile with the consent and permission of the named insured, Miss Opal Tingle. The court is shown that said policy of insurance expired at 12:01 o'clock A. M., on the 16th day of July, 1950, or some hours prior to the time of the accident as set forth in said petitions. * * * "

"Said policy of insurance was purchased by Miss Opal Tingle through, and negotiations therefor were had with, one Howard C. Childs, a resident of Locust Grove, Georgia, who was and is an agent of this complainant. About sixty (60) days before the expiration of said contract of insurance complainant issued from its Atlanta office another policy of

lision had occurred at 6:30 P.M., July 16, 1950; that prior to that date plaintiff as insurer, had issued to Miss Tingle, and she had accepted, an automobile liability insurance policy insuring her against damages for liability imposed on her by law for collision damages; that that policy had expired at 12:01 A.M., on July 16, 1950, and no liability was being, or could be, asserted thereunder; that, however, some sixty days before its expiration, plaintiff had issued and sent to its agent for delivery to, and acceptance by, the assured, policy No. VF 1, 001, 176, in renewal thereof, effective 12:01 A.M., on July 16, 1950; that the policy, though delivered to, was not accepted by, the insured, but, on the contrary, was rejected and refused; and that plaintiff was, therefore, under no obligation to its assured to defend the suits, nor was it liable either to its assured or to those who had sued her.

In their answer, the Tingles admitted that the matters as pleaded by plaintiff in paragraph 9 transpired as alleged by it, and agreed with plaintiff that the policy, VF 1, 001, 176, was not accepted and did not become effective. In addition, they alleged in effect: that neither of them was at fault in connection with the collision; that the sole liability for the accident rests upon the driver of the Loudermilk car; and that it was because they were not at fault and did not believe themselves to be in need of the protection afforded thereby that they declined to accept the policy when it was delivered to them.

The defendants Loudermilk and Brooks, in their answer insisted that the court was without jurisdiction of the controversy presented by plaintiff's petition, and moved to dismiss it on the ground that since the insurance company had already committed itself by agreement with plaintiff to defend the suit in the Superior Court, and the question of ultimate liability on the policy would not arise unless Loudermilk et al. obtained judgment against the Tingles, no real controversy was presented, and no case for a declaratory judgment was made out.

As a second defense they alleged: that the plaintiff had recognized its liability, as insurer of Miss Opal Tingle as the owner of the car and Horace Tingle as the driver thereof, by taking, with their knowledge and consent, full and complete control of the defense of the suits brought against them by the defendants; that the liability

---

liability insurance in terms similar to the afore-mentioned policy of insurance, Number VF 522,840. This latter policy of insurance issued as just described was under the complainant's number VF 1, 001, 176, and Miss Opal Tingle was the named insured. The new policy of insurance was mailed to the aforesaid Agent Childs to be delivered to the said Miss Opal Tingle. Following his usual custom, said Childs did not deliver the second policy of insurance until after the expiration of the policy first set forth above. At some time after the 16th day of July, 1950, the said Childs delivered to the said Miss Opal Tingle the insurance policy Number VF 1, 001, 176, to be effective retroactively as of 12:01 o'clock, A. M., July 16, 1950.

"Miss Tingle, with full knowledge of said accident, and after giving consideration to the acceptance of said policy, returned it to Agent Childs with the statement that she did not desire to purchase said policy.

"When said policy was returned unaccepted by the said Miss Opal Tingle,

Agent Childs informed the said Miss Tingle that if she accepted said policy of insurance, it would be effective as of 12:01 o'clock A. M., July 16, 1950 [though pleaded as 12:01 A. M., the undisputed proof showed it to be 12:01 P. M.], and to the extent of its terms and conditions would protect her from damages growing out of the above described accident. Again Miss Tingle said she did not want the insurance.

"10. Complainant says that by reason of the things hereinbefore alleged said policy of insurance, Number VF 1, 001, 176, never became effective; hence it is not liable for the damages resulting from said accident, nor should it be called upon to defend the pending litigation above described. Nevertheless, complainant is advised that counsel for Mrs. J. L. (Lillian) Loudermilk and Mrs. Maude T. Brooks have asserted that they expect to enforce against this complainant any judgment obtained against either or both of the defendants, Miss Opal Tingle and Horace Tingle."

contract is in fact in full force and effect; and that if it is not, plaintiff is estopped by its conduct from claiming the contrary.

For a third defense they pleaded in effect: that by its acts and conduct, and that of its agent, plaintiff had defrauded the Tingles by preventing them from securing independent representation and advice; further that, while professing to be looking after the interests of the Tingles, but knowing that they were ignorant of their responsibilities and their rights, it had persuaded and induced them to agree to, and to, act contrary to their own interests in order to protect the insurance company; and that this conduct was in law a fraud upon the plaintiffs and upon the defendants. Finally, defendants demanded a trial by jury.·

The district judge denying the motion to dismiss for failure of the complaint to state a case for declaratory judgment, the cause was set for trial on the merits [2] and mistakenly called for trial and tried before the court without a jury.

Upon findings of fact,[3] that the policy had never been accepted by the named assured and had, therefore, never become of

---

**2.** In addition to proof of the facts pleaded, there was evidence to the following effect:

One Childs, was an officer of the local bank at Locust Grove. He was also agent for plaintiff and, as described by Miss Tingle in her letter to the insurance company, he also acted as agent for her in the matter of the policy.

At the time the original liability policy was written, a collision policy was also written, the latter policy was retained by the bank as security on the loan made on the automobile. The liability policy was left with Childs for safe keeping.

There was testimony that, though advised that the policy was effective and covered the collision, the Tingles refused its protection because they thought they were not liable, since they had not done anything wrong, and it was therefore not worth the $33.00 premium which had to be paid.

The Tingles did not understand, and neither Childs nor anybody else for the company explained to them, that whether they were liable or not, they would have to defend the suit, that the expenses of defending it would be far more than the $33.00 premium, and that if they accepted the policy, the company would be obligated to pay all of these expenses and up to the amount of the policy whatever judgment would be obtained against them.

Childs wrote the company, stated the facts, and requested *that the policy be cancelled flat*, the company refused to cancel without an affidavit from Miss Tingle stating that she did not request the renewal and, notwithstanding the fact that, after the accident had occurred, the policy had been tendered her as covering, she had not accepted, and did not want, it.

The affidavit enclosed by the company to Childs for Miss Tingle's execution and signed by her, reads as follows:

"I, Miss Opal Tingle of Locust Grove, Georgia, have the following to state regarding Liability Coverage on my 1941 Chevrolet Sedan, Motor Number GAA-550622. I carried liability coverage on this car for the period July 16, 1949, through July 16, 1950, under Fidelity and Casualty policy #VF-522840. I did not request my agent, H. C. Childs, to renew this liability coverage and even though coverage has been tendered me for liability coverage for the period July 16, 1950, to July 16, 1951, under VF-1001176, I have never accepted and I do not desire same. I make this statement having full knowledge of the existing circumstances of the accident of July 16, in which I was involved."

She also furnished the company with a "non-waiver" agreement which permitted it to investigate, etc., without waiving its right to disclaim liability. These events occurred in 1950. The suits in the State Court were not filed until March of 1951.

There was evidence that agents of the insurance company investigated the facts of the accident and in the course of such investigation one of them called on Mr. Loudermilk, husband of one of appellants, and in the course of the conversation may have told him that he wanted to ascertain whether the cases could be settled.

When the State Court suits were filed the officer who served Mr. Tingle told him that Mr. Brown, one of appellant's attorneys, wanted to see him. Brown instructed him to send a copy of the papers to the insurance company. He took them to Childs and asked him to mail them to the company. Childs would not accept them, but furnished Tingle an envelope in which to mail them.

**3.** One of these findings was: "The Loudermilks filed suit against the Tingles and

force, the court gave judgment for plaintiff. Thereafter, the defendants moving for a new trial on the ground that the findings of fact are contrary to the evidence, and on the ground that they had been deprived of a jury trial, the district judge, concluding that the evidence demanded a finding for plaintiff and that the failure to afford a jury trial was harmless error, at first denied defendant's motion. Later, however, he granted it, saying:

"The Court is still of the opinion that the testimony adduced upon the trial of the case demands a verdict in favor of the plaintiff, and that another trial of the case upon the same evidence before a jury would be a useless procedure.

"However, the question as to whether there is available other evidence, in addition to that already adduced, sufficient to create an issue of fact to be passed upon by a jury is a question which, by pre-trial and other rules, may be determined prior to another trial of this case."

Matters standing thus, plaintiff moved, under Rule 56, for a summary judgment based on the pleadings, and the transcript of the record made on the trial before the district judge, and the court determined; that there existed no genuine issue as to any material fact; and that plaintiff was entitled as matter of law to a summary judgment, that it was not liable on the policy; and gave judgment accordingly.

Appealing from the judgment, the defendants Loudermilk, et al., are here, insisting: that the case was not one that could possibly be decided on summary judgment in favor of the plaintiff; and, in the alternative, that if it ought not to have been decided as matter of law for the defendants, there were certainly fact issues which required submission to the jury. Of these fact issues one was: whether the policy had been in fact accepted either by the Tingles' agent Childs, who, though the agent for the company, was also, as Miss Tingle swore, her agent, or by the Tingles themselves, and their action, after receiving and holding the policy for two or three days, was not rather an effort to cancel than a refusal to accept.

In addition, assuming that there was no formal acceptance, there was the issue whether the failure to accept had been due to fraud between the Tingles and the insurance company to defeat the defendants, or to fraud practiced by the insurance company alone, upon both the Tingles and the defendants.

We find ourselves in full agreement with appellants that the case was not one which could be decided on summary judgment for plaintiff. It should either have been decided as matter of law for defendants on the ground that it appeared without dispute that the policy was accepted and then returned for cancellation, or it should have been submitted to a jury for the determination by the jury, as a matter of fact, whether this was so, and, if it was not accepted, for the determination of the other issues arising out of the charges of fraud, prac-

Horace Tingle carried the copy of complaint and process served upon him to Mr. Brown of counsel for plaintiffs, who then advised Mr. Tingle that he and Miss Tingle were covered by liability insurance issued by the plaintiff, suggesting that Mr. Tingle mail the papers to plaintiff company with the request that they give it attention, which was done. The company then took non-waiver agreement from Miss Tingle and filed defensive pleadings in the damage suit, obligating itself to defend the suit without admission of liability under the policy. * * *"

"* * * It appears that Miss Tingle with the advice of her father, elected not to accept the policy and not to incur liability for premium even though they had knowledge of the accident. Horace Tingle, the father, states that he did not realize at the time that acceptance of the policy and payment of the $33.00 premium would have entitled his daughter to call upon the insurance company to defend the suit at its own expense, that he did not realize that that expense alone would more than justify the payment of the premium. However, the Tingles have never contended that the policy was ever of force, and they have consistently denied that fact, and they have not claimed, nor does the evidence show, any fiduciary relationship between plaintiff company and themselves, nor any fraud of misrepresentation by the latter.

ticed upon the defendants by the Tingles and the insurance company, or practiced by the insurance company alone on both the Tingles and the defendants.

In addition to providing insurance for the Tingles against their legal liability, the policy contained a condition, No. 6, providing in substance that "any person * * * who has secured judgment against the insured * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy, and that bankruptcy or insolvency of the insured or the insured's estate shall not relieve the company of any of its obligations under this policy".

Thus the policy, if accepted, conferred rights not only upon the Tingles but upon the plaintiffs [4] in the damage suits, rights which became vested from and after the occurrence of the accident. This is especially so here since it plainly appears that the Tingles fully complied with all the terms of the policy by immediately notifying the plaintiff insurance company of the accident and that plaintiff then and there, notwithstanding it had obtained from Miss Tingle the affidavit referred to above, entered into a non-waiver agreement to accord them full defense in the suits.

Under the circumstances of this case, showing almost if not quite, as a matter of law that there was an acceptance, followed by an effort to cancel, rather than a failure to accept, it certainly cannot be said that a jury would be bound to accept the statements of the Tingles and of Childs as establishing as matter of law that there was no acceptance. Quite to the contrary, the jury, under appropriate instructions, would have the right, in the light of the conditions surrounding their actions, to reject their statements of fact, and especially their conclusions as to the effect of what they did, if it believed that the statements were not

truthfully made but were made with intent to deceive and defraud the defendants Loudermilk et al., or, if truthfully made, were made under and as the result of fraud and deception practiced by the plaintiff.

This is not to say that if the jury believes that, without any fraud or deception being practiced upon them by plaintiff, and honestly and with full knowledge of their rights and the effect of what they did, for the purpose of protecting their own interests and not falsely and acting in collusion with plaintiff to defraud Loudermilk et al., the Tingles did decline to accept and pay for the policy, that defendants, the Loudermilks et al., could nevertheless recover on the policy.

It is to say, though, that in determining the question of acceptance *vel non,* the jury can and must first determine, whether the rejection by the Tingles was really a failure to accept or was a rejection by way of cancellation after the policy had become a claim, either by its acceptance by Childs as their agent or by its acceptance by them. Next, if they find that it was in reality a failure to accept, then they must determine in the light of all the circumstances, including the agreement of the company to defend them made after Miss Tingle had signed the requested affidavit, whether the refusal to accept was fraudulent because in collusion with the plaintiff insurance company to defeat the claims of defendant Loudermilk et al. In short, this is a case, the peculiar circumstances of which admitted of, if they did not require, a jury verdict, holding precisely to the contrary of that which was found below as matter of law. This is not the kind of case that can be settled on summary judgment. It is peculiarly the kind of case where the triers of fact whose business it is not only to hear what men say but to search for and find the roots from which the sayings spring, should

---

4. Rushing v. Commercial Cas. Ins. Co., 251 N.Y. 302, 167 N.E. 450; Zimmerman v. Union Automobile Company, 133 Or. 600, 291 P. 495; Finkelberg v. Continental, 126 Wash. 543, 219 P. 12; Spann v. Commercial Standard Ins. Co., 8 Cir., 82 F.2d 593; Pennsylvania Casualty Co. v. Phoenix, 10 Cir., 139 F.2d 823; Graham v. Williams, 114 Ga. 716, 40 S.E. 790; New Amsterdam Casualty Co. v. Jones, 6 Cir., 135 F.2d 191; Blashfield Cyclopedia, Secs. 4071–4084; Standard Acc. Ins. Co. v. Fowler, 80 Ga.App. 503, 56 S.E.2d 807; Cf. Michel v. American Fire Co., 5 Cir., 82 F.2d 583.

be afforded full opportunity to determine the truth and integrity of the case. Cf. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir., 186 F.2d 365, at page 367; Colby v. Klune, 2 Cir., 178 F.2d 872, 873.

The judgment is reversed and the cause is remanded for a full trial on the issues tendered, including a determination of the single claim of fact tendered in the plaintiff's petition, whether or not in fact there was an acceptance of the policy, or whether, if there was no acceptance, this was brought about by collusion with the insurance company in an attempt to defraud the plaintiffs in the damage suit, or, if not in collusion with the plaintiff, as a result of the Tingles being overreached by the insurance company and its agents.

Reversed and remanded.